# UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF NEW YORK

In re:

     IN SOOK STERLING

        Debtors.

_____/

STRATEGIC FUNDING SOURCE, INC.

     Plaintiff,
  v.

IN SOOK STERLING,

MTK 38 INC.,

   and

JAY ENTERTAINMENT CORP.

     Defendants.

_____/

Chapter 7

Case No. 19-10132-scc

Adversary Pro. No._____

## COMPLAINT TO DETERMINE NONDISCHARGEABILITY OF
## DEBT OWED TO STRATEGIC FUNDING SOURCE, INC. d/b/a KAPITUS, INC.

Strategic Funding Source, Inc. d/b/a Kapitus, Inc. ("Plaintiff" or "SFS") by its undersigned attorneys, files this Complaint under section 523 of title 11 of the United States Code, 11 U.S.C. §§ 101–1532 (as amended, the "Bankruptcy Code,") objecting to the dischargeability of a pre-petition debt owed by Defendants In Sook Sterling a/k/a In Sook Cho ("Debtor") , Mtk 38 Inc. d/b/a Japas 38 f/d/b/a/ Ichiban 71 Clinton LLC f/d/b/a May's Place, Inc. d/b/a Kirakuya ("Japas 38") and Jay Entertainment Corp. d/b/a Japas NY ("Japas NY") (and also seeking a determination of successor liability against Jay Entertainment Corp. d/b/a Japas NY for the certain debt owed to Plaintiff by Debtor).  In support hereof the Plaintiff alleges as follows:

1

## I.    JURISDICTION AND VENUE

1.      This is a core proceeding under 28 U.S.C. §157(b)(2)(I) and is brought pursuant to 11 U.S.C. §§ 523(a) and Rule 4007 of the Federal Rules of Bankruptcy Procedure.

2.      Subject matter jurisdiction is conferred upon this Court by 28 U.S.C. §§ 157, 1334 and 523.

3.      Venue over the instant action properly lies in this Court pursuant to 28 U.S.C. §1409(a) because this Complaint arises in Debtor's Chapter 7 bankruptcy case.

4.      If the Court should find that this is not a core proceeding, Plaintiff consents to entry of final judgment by the Court.

5.      Notwithstanding any of the allegations and claims herein, the institution of this Adversary Proceeding, the filing of this complaint and any other appearance in this Adversary Proceeding and in the above-referenced bankruptcy case, including the submission of motions, opposition papers, and entry of orders, is without waiver, and express reservation, of any and all of SFS's rights, defense and remedies available at law and in equity, including, without limitation, under the Agreement (as defined below), Uniform Commercial Code, any other applicable federal or state law and/or commercial code, and the Federal Arbitration Act, 9 U.S.C. § 1 *et seq*.  If and when SFS files a proof of claim in the Bankruptcy Case (the "Proof of Claim"), SFS expressly incorporates any reservation of rights that it shall incorporate in the Proof of Claim.

6.      This Adversary Proceeding relates to In re In Sook Sterling, No. 19-10132-scc, (Chapter 7), now pending in this Court (the "Bankruptcy Case").

## II.    THE PARTIES

7.      Plaintiff is and was, at all relevant times, a New York corporation with its place of business at 120 W. 45th Street, New York, New York 10036.

2

8.      Upon information and belief, Defendant Debtor is an individual residing in the state of New York at 201 East 36 Street, Apt. No. 16F, New York, New York, 10016.

9.      Upon information and belief, Defendant Debtor, is or was, at all relevant times, the co-owner and guarantor of Defendant MTK 38, Inc. d/b/a Japas 38, a New York corporation.   Upon information and belief, Japas 38 was located at 9 E. 38th Street, New York, New York 10016.  Upon information and belief, Japas 38 stopped operating on October 22, 2018.

10.     Upon information and belief, Defendant Jay Entertainment Corp. d/b/a Japas NY is a New York corporation with its principal place of business located at 9 E. 38th Street, New York, New York 10016.  Upon information and belief, Japas NY is the successor in interest to Japas 38.

11.     Upon information and belief, Defendant John Doe is an as of yet unidentified individual or entity that received fraudulent transfers from Defendants Shook and/or Japas 38. Because the identifying information and the transactions that give rise to the claims against Defendant John Doe is in the possession of the Defendants, Plaintiff will seek to amend this Complaint to substitute the actual name of Defendant John Doe following discovery of the same from Defendants.

12.     Plaintiff is a secured creditor of Japas 38 and an unsecured creditor with a claim against Debtor, in the amount of at least $60,628.00 (plus additional costs, fees, expenses, and interest), pursuant to the performance guarantee obligation of Japas 38 executed by Debtor, as more fully detailed below.

## III.  GENERAL ALLEGATIONS

13.     Debtor filed for bankruptcy under Chapter 7 of the Bankruptcy Code on January 14, 2019 (the "Petition Date").

14.     Pursuant to Official Form 309A, filed on January 15, 2019, April 8, 2019 is the deadline to object to discharge.

15.     Accordingly, this Complaint is timely filed.

## IV.  SPECIFIC FACTUAL ALLEGATIONS

16.     On August 13, 2018, Plaintiff entered into a Future Receivables Factoring

Agreement (ACH) (the "Agreement") with Japas 38.   Under the Agreement, Plaintiff purchased

$79,200.00 of Japas 38's future receivables for the purchase price of $55,000.00.   Plaintiff

performed its obligations under the Agreement and delivered to Debtor, as owner of Japas 38,

$55,000.00.  A true and correct copy of the Agreement is attached hereto as **Exhibit A**.

17.     Debtor signed and authorized the Agreement as the Owner of Japas 38 and executed

a separate Personal Guaranty of Performance (the "Guaranty"), whereby she personally guaranteed

all representations, warranties, and covenants made by Japas 38 in the Agreement. *See* **Exhibit A**,

pp. 7–8.

### The Pre-Funding Call

18.     Prior to funding Debtor under the Agreement, Debtor participated in a recorded pre-

funding call on or about August 13, 2018, as the owner and guarantor of Japas 38, and represented:

(a) that she did not anticipate closing her business for any reason over the next twelve (12) months;

(b) that she did not anticipate selling her business in the next twelve (12) months; (c) that she did

not anticipate filing for bankruptcy protection in the foreseeable future; (d) that she was current on

her payments to her landlord; and (e) that she was not in arrears on any debt.  The relevant portions

of the Pre-Funding call are transcribed below:

> **SFS Representative**:  Do you anticipate closing your business for
> any reason over the next 12 months, including planned vacation,
> renovations, seasonality, or slow business?
>
> **Debtor**: No
>
> **SFS Representative**:  Do you anticipate selling your business in the
> next twelve (12) months?

**Debtor**: No.

**SFS Representative**:  Have you been planning to file or do you have any reason to believe that your business would need to file for bankruptcy protection in the foreseeable future.

**Debtor**: No, I just finished the renovations.

**SFS Representative**:  Are you current on your payment with your landlord for your business?

**Debtor**:  Yeah.

**SFS Representative**:  Are you in arrears on any loans or with any financial institution?

**Debtor**:  What do you mean, I don't understand.

**SFS Representative**: Are you late on any payments with any other loan?

**Debtor**: No, I'm not.

**SFS Representative**:  Do you currently have a balance with any other working capital provider?

**Debtor**:  Yeah.

**SFS Representative**: And what provider

[inaudible]

**Debtor**:  Fox Funding.

**SFS Representative**: And how much is that for

**Debtor**: That was for $50,000, but I almost paid.

**SFS Representative**:  But do you know what the balance is right now?

**Debtor**:  I don't know, I have to [inaudible]

**SFS Representative**: Ah, ok.

**SFS Representative**:  Do you recognize that a false statement or misrepresentation may constitute fraud and subject you to legal action?

5

[SFS Representative repeats the question several times]

**Debtor**: Yes.

## The Agreement

19.     As briefly outlined above, pursuant to the Agreement signed by Plaintiff and Debtor

on August 13, 2018, Plaintiff purchased $79,200.00 of future accounts, monetary payments, and

other general receivables generated in the course of Debtor's business, Japas 38 (the

"Receivables").

20.     To allow Plaintiff to collect its purchased Receivables, the Agreement required Japas

38 to use only a single, specified depositing account to deposit all Receivables collected by Japas

38 (the "Account"), which was designated by the parties in the Agreement and fully accessible to

Plaintiff.  *See* **Exhibit A**, Agreement, pp. 1, 3 §§ 1.1, 2.3.  From this account, the Agreement entitled

Plaintiff to collect a portion of the daily batch amount of Japas 38's collected receivables via

Automated Clearing House ("ACH") in the daily amount of $387.00 from the Account.  *See id.*, pp.

1, 4 §2.7.

21.     To avoid disruption, the Agreement prohibited changes to the Account or the

designation of the deposit account except with Plaintiff's express written consent.  *See id.* at p. 3

§1.1.

22.     Debtor, as owner and guarantor of Japas 38, also made the following representations

and warranties in connection with the Agreement:

**II.     REPRESENTATIONS, WARRANTIES AND COVENANTS.**
Merchant represents, warrants and covenants that as of this date and during
the term of the Agreement:

**2.1 Financial Condition and Financial Information.**  Merchant is solvent,
and not transfer of property is being made by Merchant and no obligation is
being incurred by Merchant in connection with this Agreement with the
intent to hinder, delay, or defraud either present or future creditors of
Merchant.  Merchant's bank statements and financial information, provided

6

to PURCHASER fairly represent the financial condition of Merchant at such dates, and since those dates there has been no material changes, financial or otherwise, in such condition, operation or ownership of Merchant. Merchant is current on any and all lease, rent or mortgage payments due. No material changes financial or otherwise, in the condition, operation or ownership of Merchant are in any way expected or anticipated. Merchant has a continuing, affirmative obligation to advise PURCHASER of any material change in its financial condition, operation or ownership. PURCHASER may request statements at any time during the performance of this Agreement and the merchant shall provide them to PURCHASER within 5 business days. Merchant's failure to do so is a material breach of this Agreement.

**2.2 Governmental Approvals.** Merchant is in compliance and shall comply with all laws and has valid permits, authorizations and licenses to own, operate and lease its properties and to conduct the business in which it is presently engaged.

***

**2.5 Tax Obligations.** Merchant is currently in compliance with all federal state and local tax laws, has filed all returns, and has paid all taxes due, except as disclosed to PURCHASER.

**2.6 Change of Name or Location.** Merchant will not conduct Merchant's businesses under any name other than as disclosed to the PURCHASER or change any of its places of business without ten (10) days prior written notice to PURCHASER.

**2.7 Daily Batch Out.** Merchant will batch out receipts with the Processor on a daily basis.

***

**2.9 No Bankruptcy or Insolvency.** As of the date of this Agreement, Merchant represents that it is not insolvent and does not contemplate and has not filed any petition for bankruptcy protection under Title 11 of the United States Code . . . Merchant further warrants that it does not anticipate filing any such bankruptcy petition and it does not anticipate that an involuntary petition will be filed against it.

**2.10 Additional Financing.** Merchant shall not enter into any arrangement, agreement or commitment for any additional financing, whether in the form of a purchase of receivables or a loan to the business with any party other than PURCHASER without PURCHASER's written permission. 2.11 Unencumbered Receipts. Merchant has good, complete and marketable title to all Receipts, free and clear of any and all liabilities, liens, claims, changes, restrictions, conditions, options, rights, mortgages, security interests, equities, pledges and encumbrances of any kind or nature whatsoever or any

7

other rights or interests that may be inconsistent with the transactions contemplated with, or adverse to the interests of PURCHASER.

**2.12 Business Purpose.** Merchant is a valid business in good standing under the laws of the jurisdictions in which it is organized and/or operates, and Merchant is entering into this Agreement for business purposes and not as a consumer for personal, family or household purposes.

****

*Id.* pp. 3–4.

23.     The Agreement also contained the following language, to which Debtor agreed when she executed the Agreement:

**ANY MISREPRESENTATION MADE BY MERCHANT OR OWNER IN CONNECTION WITH ANY APPLICATION FOR FUNDING, IN ANY DOCUMENT SUBMITTED AND/OR THIS AGREEMENT WILL RESULT IN A SEPARATE CAUSE OF ACTION, INCLUDING BUT NOT LIMITED TO A CLAIM AGAINST THE OWNER/GUARANTOR FOR FRAUD OR FRAUDULENT INDUCEMENT**

*Id.* p. 2.

24.     Debtor further executed a personal guaranty of Japas 38's full performance of all terms and obligations under the Agreement (the "Guaranty"). *See* **Exhibit A**, Guaranty, as attached to pp. 6–7 of the Agreement.

25.     In reliance on the representations made by Debtor in the pre-funding call, the Agreement, and the Guaranty, Plaintiff provided the funding agreed to in the Agreement.

### Debtor's Immediate Breach

26.     Almost immediately after its execution by the parties, Debtor and Japas 38 materially violated the terms of the Agreement.  On October 25 Plaintiff's debits began returning as Insufficient Funds, and on November 1, 2018 the return code became "Stop Payment".  Plaintiff's Resolution Department made numerous attempts to reach Debtor and Japas 38, and on November 27, 2018, were advised that the restaurant had changed ownership.

8

27.     By no later than October 25, 2018, Debtor stopped depositing Japas 38's Receivables (or any other amounts) into the Account, thereby preventing Plaintiff from collecting its Receivables purchased from Debtor.  As the Agreement was executed by the parties on August 13, 2018, Plaintiff materially breached the Agreement a mere 2 months after its execution.

28.     Debtor paid only $18,572.00 of the $79,200.00 owed to Plaintiff, thereby leaving a secured balance of Receivables owed to Plaintiff in the amount of $60,628.00.

29.     Debtor has failed to fulfill her and Japas 38's obligations, either personally or as guarantor, to cure the debt owed to Plaintiff, and has defaulted under the Agreement and the Guaranty.   Accordingly, Debtor is liable to Plaintiff in the amount of $60,628.00 under the Agreement and Guaranty outlined above, plus additional costs, interests, and attorneys' fees, as demonstrated by the Judgment and the Agreement.

30.     At the Debtor's bankruptcy 341 Hearing, Debtor testified that she paid her employees in cash.  However, when Andrew Grossman, Esq. an attorney for another creditor, repeatedly asked about a safe on the premises and the cash stored in it, Debtor insisted that there was no cash kept at the restaurant.

31.     Debtor stated at the 341 hearing that she was the sole owner and her ownership of the restaurant ended on October 31, 2108 and that the owner of the building took possession of the business according to a written agreement between them.  When pressed about the "agreement" she stated that she had an agreement with the landlord that if she did not pay rent for three months the landlord could take possession without an eviction proceeding.

32.     Upon information and belief, Debtor never intended to honor the representations made during the pre-funding call, in the Agreement, or in the Guaranty.  Instead, upon information and belief, Debtor was behind on her rent to the landlord, anticipated closing her business within

the next twelve months, planned on selling her business within the next twelve months, and anticipated filing for bankruptcy in the foreseeable future.

33.     Specifically, according to Debtor's Voluntary Petition for Individuals Filing Bankruptcy (the "Petition"), Japas 38 stopped operating on October 22, 2018, just over two months following the pre-funding call.  *See* ECF No. 1.   Then, on January 14, 2019, just five months after receiving funding, Debtor filed for bankruptcy.  Moreover, at Debtor's 341 Hearing, she represented that she had not paid rent since July 2018, which is a direct contradiction of her representation that she was current on her rent during her pre-funding call.

34.     Further, Debtor's Petition lists a litany of debt owed to 40 unsecured creditors, including Plaintiff, as well as $85,000 in tax obligations for Japas 38.  Other creditors include American Express Bank, American Express Bank FSB, Bank of Hope, Chase, Citi Simplicity Visa, Citibank NA, Discover, Noah Bank, Prime Business, and Wilshire Bank.

35.     The vast majority of the debt in Debtor's Petition was debt incurred by Japas 38.  In fact, of the $1,898,458.47 of liabilities listed, $1,638,126.42 is attributed to debt or tax obligations of Japas 38.

36.     In short, Debtor was behind on payments to her landlord at the time when she represented otherwise during the pre-funding call and when she executed the Agreement and Guaranty, stopped operating Japas 38 only two months later in October 2018, and filed for bankruptcy in January 2019 primarily due to the significant debt incurred on behalf of Japas 38.

37.     Debtor's conduct and statements demonstrate that Debtor obtained money from Plaintiff by false pretenses, false statements, or actual fraud.  Accordingly, the debt owed by Debtor to Plaintiff is non-dischargeable, and Plaintiff is entitled to an award of damages in the amount of

$60,628.00, plus attorneys' fees, costs incurred, and such other relief as the Court deems just and proper.

38.     Furthermore, in an effort to avoid the debt owed to Plaintiff, on or about October 22, 2018, Japas 38 stopped operating and reopened as Jay Entertainment Corp. d/b/a Japas NY ("Japas NY").  Japas NY is located at 9 E. 38th Street, New York, New York 10016, the same address and building that Japas 38 was located and operated.

39.     The restaurant is now owned and operated by a Jay Entertainment Corp. d/b/a Japas NY, which was originally incorporated in New Jersey and then formed as a New York Corporation on September 21, 2018, and which is defined above as Japas NY.  An application for a Liquor License was made by Japas NY on or about November 15, 2018.  Upon information and belief, Japas NY is in receipt of assets that were transferred to it from Debtor and/or Japas 38 in an attempt to avoid the payment of Receivables purchased by, and which rightfully belong to, Plaintiff.

40.     Additionally, the online presence for the business remains under the name of Japas 38.  Just as Japas 38, Japas NY provides karaoke and Japanese fare in its business operations.

41.     Upon information and belief, Defendant John Doe is also in possession of assets that were transferred to it from Debtor and/or Japas 38 in an attempt to avoid the payment of Receivables purchased by, and which rightfully belong to, Plaintiff.

42.     Defendants' conduct is in violation of federal and state law, and entitle Plaintiff to judgment in the amount of $60,628.00 (plus attorneys' fees, costs incurred, and such other relief as the Court deems just and proper), the entirety of which is nondischargeable.

## PLAINTIFF'S CAUSES OF ACTION AGAINST DEFENDANTS

## COUNT I

**(Nondischargeability of Debt Pursuant to 11 U.S.C. § 523(a)(2)(A) False Pretenses, False Representations, Actual Fraud)**

43.     Plaintiff repeats and realleges the above allegations set forth in Paragraph 1 through 42 and incorporates the same herein as though more fully stated at length.

44.     Debtor's liability to Plaintiff, as alleged herein, is a debt for money owed and services provided within the meaning of 11 U.S.C. § 523(a)(2).

45.     Debtor obtained money and services by false pretenses, false representations, and/or actual fraud within the meaning of 11 U.S.C. § 523(a)(2)(A).

46.     Pursuant to Section 523(a)(2)(A) of the Bankruptcy Code, a debt in which a debtor obtains money by false pretenses, false statements, or actual fraud shall not be dischargeable.

47.     Debtor entered into the Agreement under false pretenses because despite her representations to the contrary, at the time of the Agreement never had any intention to honor the Agreement or the Security Agreement.  Instead, Debtor anticipated closing her business within the next twelve months, never had any intention to use the funding proceeds for business purposes, and anticipated filing for bankruptcy in the foreseeable future.  Additionally, in further contradiction of the representations made by Debtor on the pre-funding call, debtor was behind on her payments to her landlord at the time of the call, and was in arrears on several loans.

48.     Upon information and belief, as fully detailed above, Debtor made false statements in connection with the pre-funding call and in connection with the warranties and representations included in the Agreement and Guaranty.  Further, Debtor knew her statements were false, and, as a direct and proximate cause of these intentional misrepresentations and omissions, Debtor knew that Plaintiff would be induced to tender funding to Debtor.

12

49.     Upon information and belief, Debtor intended to induce Plaintiff to act or refrain from acting upon her false statements, and Plaintiff justifiably relied upon such false statements.

50.     Plaintiff suffered damages as a direct and proximate consequence of the false statements made by Debtor.

51.     As a result of false statements and fraud by Debtor, Debtor obtained from Plaintiff, inter alia, funding which would not have been authorized by Plaintiff if the false statements had not been made, or if material facts that were omitted and concealed, were actually disclosed.

52.     Debtor's statements and acts described above constitute conduct to obtain money by false pretenses, false statements or actual fraud.

53.     The Debtor's debt to Plaintiff is a debt for money, property, services, or an extension, renewal, or refinancing of credit, obtained by false pretenses, a false representation, or actual fraud, and is non-dischargeable.  Plaintiff is further entitled to an award of damages in the amount of $60,628.00, plus attorneys' fees, costs incurred, and such other relief as the Court deems just and proper.

**COUNT II**
**(Nondischargeability of Debt Pursuant to 11 U.S.C. §523(a)(2)(B)**
**Materially False Statement with Intent to Deceive)**

54.     Plaintiff repeats and realleges the above allegations set forth in Paragraph 1 through 53 and incorporates the same herein as though more fully stated at length.

55.     Debtor's liability to Plaintiff, as alleged herein, is a debt for money owed and services provided within the meaning of 11 U.S.C. § 523(a)(2).

56.     Pursuant to 11 U.S.C. §523(a)(2)(B), a debt in which a debtor obtains money by a statement in writing that is materially false respecting an insider's financial condition, on which the creditor reasonably relied, and which the debtor caused to be published with intent to deceive is nondischargeable.

57.     The Debtor and Japas 38, an insider of the Debtor, did obtain money from Plaintiff by the following written materially false statements in the Agreement respecting Debtor's and Japas 38's financial condition on which Plaintiff reasonably relied, among others:

a.      In the Agreement, Debtor represented to Plaintiff that Debtor intended to use the proceeds of the Agreement for business purposes.   Specifically, the Debtor represented and promised to Plaintiff to use the proceeds exclusively for a "business purposes and not as a consumer for personal, family or household purposes." *See* **Exhibit A**, Agreement, p. 4 § 2.12.  Plaintiff justifiably relied on these representations to extend the financing and execute the Agreement.

b.      To allow Plaintiff to collect its purchased Receivables, the Agreement required Debtor to use only a single, specified depositing account to deposit all Receivables collected by Discovery (the "Account"), which was designated by the parties in the Agreement and fully accessible to Plaintiff.  *See* **Exhibit A**, Agreement, pp. 1, 4 §§ 1.1, 2.3.   Plaintiff justifiably relied on these representations to extend the financing and execute the Agreement.

c.      The Agreement further contained the following representations that Plaintiff justifiably relied upon:

**II.     REPRESENTATIONS,  WARRANTIES  AND  COVENANTS.**
Merchant represents, warrants and covenants that as of this date and during the term of the Agreement:

**2.1 Financial Condition and Financial Information.**  Merchant is solvent, and not transfer of property is being made by Merchant and no obligation is being incurred by Merchant in connection with this Agreement with the intent to hinder, delay, or defraud either present or future creditors of Merchant.   Merchant's bank statements and financial information, provided to PURCHASER fairly represent the financial condition of Merchant at such dates, and since those dates there has been no material changes, financial or otherwise, in such condition, operation or ownership of Merchant.  Merchant is current on any and all lease, rent or mortgage payments due.  No material

changes financial or otherwise, in the condition, operation or ownership of Merchant are in any way expected or anticipated. Merchant has a continuing, affirmative obligation to advise PURCHASER of any material change in its financial condition, operation or ownership. PURCHASER may request statements at any time during the performance of this Agreement and the merchant shall provide them to PURCHASER within 5 business days. Merchant's failure to do so is a material breach of this Agreement.

**2.2 Governmental Approvals.** Merchant is in compliance and shall comply with all laws and has valid permits, authorizations and licenses to own, operate and lease its properties and to conduct the business in which it is presently engaged.

***

**2.5 Tax Obligations.** Merchant is currently in compliance with all federal state and local tax laws, has filed all returns, and has paid all taxes due, except as disclosed to PURCHASER.

 **2.6 Change of Name or Location.** Merchant will not conduct Merchant's businesses under any name other than as disclosed to the PURCHASER or change any of its places of business without ten (10) days prior written notice to PURCHASER.

**2.7 Daily Batch Out.**   Merchant will batch out receipts with the Processor on a daily basis.

***

**2.9 No Bankruptcy or Insolvency.**   As of the date of this Agreement, Merchant represents that it is not insolvent and does not contemplate and has not filed any petition for bankruptcy protection under Title 11 of the United States Code . . . Merchant further warrants that it does not anticipate filing any such bankruptcy petition and it does not anticipate that an involuntary petition will be filed against it.

**2.10 Additional Financing.** Merchant shall not enter into any arrangement, agreement or commitment for any additional financing, whether in the form of a purchase of receivables or a loan to the business with any party other than PURCHASER without PURCHASER's written permission.   2.11 Unencumbered Receipts. Merchant has good, complete and marketable title to all Receipts, free and clear of any and all liabilities, liens, claims, changes, restrictions, conditions, options, rights, mortgages, security interests, equities, pledges and encumbrances of any kind or nature whatsoever or any other rights or interests that may be inconsistent with the transactions contemplated with, or adverse to the interests of PURCHASER.

**2.12 Business Purpose.** Merchant is a valid business in good standing under the laws of the jurisdictions in which it is organized and/or operates, and Merchant is entering into this Agreement for business purposes

\*\*\*\*

*See* **Exhibit A**, Agreement, pp. 3–4.

d.      Plaintiff was to collect $387.00 per week from Japas 38 via ACH debits. Plaintiff transferred the funding proceeds into this Account. Pursuant to the Agreement, Japas 38 was to maintain the Account with sufficient funds to cover receivables payments to Plaintiff. Plaintiff relied on these representations to extend the funding and execute the Agreement. *Id.*, at p. 1.

58.      Upon information and belief, as fully detailed above, at the same time the representations were made, Debtor knew these representations were materially false, untrue and misleading.

59.      Debtor caused these false statements to be made in writing, including, but not limited to publishing such statements in the Agreement.

60.      Japas 38 is an insider of Debtor, because, at the time of the Agreement and false statements, Debtor served as owner, managing member and/or person in control of Japas 38, within the meaning of "insider" under 11 U.S.C. § 101(31)(A)(iv).

61.      Plaintiff reasonably relied on these written statements made by Debtor in deciding to fund Japas 38 under the Agreement.

62.      Plaintiff suffered damages as a direct and proximate consequence of the materially false statements made by Debtor.

63.      As a result of these materially false written statements by Debtor, Debtor obtained from Plaintiff, as owner and guarantor of Japas 38, inter alia, funding under the Agreement which would not have been authorized by Plaintiff if the materially false statements had not been made.

16

64.     Debtor's activities described above constitute obtaining money by materially false written statement regarding an insider's financial condition, on which Plaintiff relied, and which Debtor made with the intent to deceive.  Thus, Plaintiff is entitled to an award of damages in the amount of $60,628.00, plus attorneys' fees, costs incurred, and such other relief as the Court deems just and proper.

65.     Further, Debtor's debt of $60,628.00 to Plaintiff (plus attorneys' fees, costs incurred, and such other relief as the Court deems just and proper)  is one for money obtained by materially false written statement regarding an insider's financial condition, on which Plaintiff relied, and which Debtors made with intent to deceive, and is nondischargeable.

### COUNT III
**(Non-dischargeability of Debt Pursuant to 11 U.S.C. § 523(a)(4)**
**Fraud or Defalcation While Acting in a Fiduciary Capacity, Embezzlement, or Larceny)**

66.     Plaintiff repeats and realleges paragraphs 1 through 65 and incorporates the same as though set forth herein.

67.     Debtor's liability to Plaintiff as alleged herein, is a debt "for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny" within the meaning of 11 U.S.C. § 523 (a)(4).

68.     Plaintiff believes and alleges that the Debtor entered into the Agreement with the specific intent to take funds from Plaintiff without any intent to repay these funds.

69.     On or about August 13, 2018, Plaintiff transferred $55,000.00, less deductions for related expenses as required under the Agreement, in reliance on the Debtor's statements in the Agreement and the pre-funding call.

70.     Debtor immediately defaulted on its obligations under the Agreement.  Within two months after the Plaintiff deposited $55,000.00 into the Account, the Debtor stopped depositing

Japas 38's Receivables (or any other amounts) into the Account, thereby stealing the Receivables purchased from Debtor for Debtor's own use. Plaintiff only debited a total of $18,572.00 in ACH payments from the Account.

71.    Debtor obtained the funds from the Agreement by committing fraud and defalcation while acting in a fiduciary capacity as the owner, managing member, shareholder, officer, and/or director of Japas 38.

72.    Upon information and belief, Debtor misappropriated significant portions of the funds and/or receivables for her own benefit by fraudulent intent or deceit.

73.    Upon information and belief, Debtor transferred the funds and/or receivables into accounts not accessible by Plaintiff, which constitutes larceny.

74.    Upon information and belief, Debtor used the funds and/or receivables without explanation, reason or purpose relating to Japas 38's business.

75.    Alternatively, Debtor's misappropriation of the funds and/or receivables was embezzlement because Plaintiff entrusted Debtor with the funds and/or receivables and because Debtor may have obtained control over such funds and/or receivables without authorization.

76.    The Debtor's debt to Plaintiff is a debt for larceny and/or embezzlement because the Debtor stole the receivables to be deposited into the Account that Plaintiff acquired under the Agreement with the intent to permanently deprive the Plaintiff of those receivables.

77.    Plaintiff sustained damages as a result of Debtor's fraud and defalcation while acting as a fiduciary, her embezzlement, and/or her larceny of the funds and/or receivables.

78.    Debtor's obligation to Plaintiff is a debt for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny, and is nondischargeable. Plaintiff is further entitled

to an award of damages in the amount of $60,628.00, plus attorneys' fees, costs incurred, and such other relief as the Court deems just and proper.

### COUNT IV
**(Non-dischargeability of Debt Pursuant to 11 U.S.C. § 523(a)(6)
Willful and Malicious Injury by the Debtor)**

79.     Plaintiff repeats and realleges paragraphs 1 through 78 and incorporates the same as though set forth herein.

80.     Pursuant to Section 523(a)(6) of the Bankruptcy Code, a debt incurred by a debtor who engages in willful malicious conduct which results in damage shall be non-dischargeable.

81.     Plaintiff believes and alleges that the Debtor entered into the Agreement with the specific intent not to use the proceeds from the Agreement for business purposes and not to repay the amounts owed under the Agreement. In addition, the Debtor made false statements to Plaintiff with the intent to induce Plaintiff to extend funds.

82.     Debtor immediately defaulted on its payment obligations under the Agreement. Plaintiff only debited a total of $18,572.00 ACH payments from the Account.  The Debtor thereafter stopped depositing funds into the Account, preventing Plaintiff from obtaining receivables it purchased from Debtor in the form of ACH payments from the Account as agreed to in the Agreement.

83.     Upon information and belief, the Debtor never had any intention to honor the Agreement.

84.     The Debtor also engaged in the following willful and malicious acts, among others:

   a.  The Debtor willfully and maliciously executed the Agreement in which he represented that her and Japas 38's financial condition was accurately reflected in the documents produced to Plaintiff.

   b.  The Debtor willfully and maliciously executed the Agreement in which he

represented that he intended to use the funds from Plaintiff for business purposes.

c. The Debtor willfully and maliciously made material omissions of fact that induced Plaintiff into transferring the funds to Japas 38, such as failing to disclose that he did not intend to pay the receivables to Plaintiff as represented in the Agreement.

d. Plaintiff funded the purchase of Receivables to Japas 38 based on the Debtor's false and fraudulent statements and acts.

85.     The Debtor's activities described herein constitute willful and malicious conduct which resulted in damage to Plaintiff.

86.     Consequently, Debtor engaged in willful and malicious conduct which resulted in damage to Plaintiff and is non-dischargeable.

87.     Accordingly, Debtor's debt to Plaintiff is non-dischargeable, and Plaintiff is entitled to an award of damages in the amount of $60,628.00, plus attorneys' fees, costs incurred, and such other relief as the Court deems just and proper.

## COUNT V
### (Conversion Against Debtor, Japas 38, Japas NY, and Defendant John Doe)

88.     Plaintiff repeats and realleges paragraphs 1 through 87 and incorporates the same as though set forth herein.

89.     Plaintiff, pursuant to the Agreement, has a superior interest than Defendants Debtor, Japas 38, Japas NY, and Defendant John Doe in the Receivables and other collateral previously belonging to Japas 38.

90.     Defendants Debtor, Japas 38, Japas NY, and Defendant John Doe, without authorization, wrongfully assumed and exercised dominion and control over the Receivables and other collateral previously belonging to Japas 38.

91.     Plaintiff was entitled to possession of the Receivables and other collateral as a result of its superior interest under the Agreement.

92.     Plaintiff has asserted its superior interest in the Receivables and other collateral to Defendants Debtor, Japas 38, Japas NY, and Defendant John Doe.

93.     Ignoring Plaintiff's asserted superior interest, Defendants Debtor, Japas 38, Japas NY, and Defendant John Doe have refused to return the Receivables and other collateral, have utilized and depleted the Receivables and other collateral for wrongful purposes, and – as to Defendant Debtor and Japas 38 – have transferred the Receivables (both past Receivables and those continuing to accrue) and other collateral to other entities, including but not limited to Defendants Japas NY and John Doe.

94.     Plaintiff seeks damages from Defendants Debtor, Japas 38, Japas NY, and Defendant John Doe as a result of their conversion, including in the amount of $60,628.00, which represents the value of Receivables purchased and remaining owed to Plaintiff, plus attorneys' fees, costs incurred, punitive damages and such other relief as the Court deems just and proper.

## COUNT VI
### (Fraud Against Debtor and Japas 38)

95.     Plaintiff repeats and realleges the above allegations set forth in Paragraph 1 through 94 and incorporates the same herein as though more fully stated at length.

96.     Debtor and Japas 38 obtained money and services by actual fraud under Virginia law.

97.     Debtor and Japas 38, intentionally and knowingly, made false and material representations in the Agreement, and neither had any intention to honor the Agreement or the Guaranty.  Instead, Debtor and Japas 38 anticipated closing their business within the next twelve months, never had any intention to use the funding proceeds for business purposes, and Debtor anticipated filing for bankruptcy in the foreseeable future.  Additionally, in further contradiction of the representations made by Debtor on the pre-funding call, Debtor and Japas 38 were behind on her payments to the landlord at the time of the call, and were in arrears on several loans.

98.     Upon information and belief, as fully detailed above, Debtor made false statements in connection with the pre-funding call and in connection with the warranties and representations included in the Agreement and Guaranty.  Further, Debtor knew her statements were false, and, as a direct and proximate cause of these intentional misrepresentations and omissions, Debtor and Japas 38 knew that Plaintiff would be induced to tender funding to them.

99.     Upon information and belief, Debtor and Japas 38 intended to induce Plaintiff to act or refrain from acting upon her false statements, and Plaintiff justifiably relied upon such false statements.

100.     Plaintiff suffered damages as a direct and proximate consequence of the false representations made by Debtor and Japas 38.

101.     As a result of false statements and fraud by Debtor and Japas 38, they obtained from Plaintiff, inter alia, funding which would not have been authorized by Plaintiff if the false representations had not been made, or if material facts that were omitted and concealed, were actually disclosed.

102.     On or about August 13, 2018, Plaintiff transferred $55,000.00, less deductions for related expenses as required under the Agreement, in reliance on the Debtor's false and material representations in the Agreement and the pre-funding call.

103.     Debtor and Japas 38 entered into the Agreement with the specific intent to take these funds from Plaintiff without any intent to repay these funds.

104.     Debtor and Japas 38's statements and acts described above constitute actual fraud under Virginia law.

105.     Upon information and belief, Debtor misappropriated significant portions of the funds and/or receivables for her own benefit by fraudulent intent or deceit.

106.     Upon information and belief, Debtor transferred the funds and/or receivables into accounts not accessible by Plaintiff.

107.     Upon information and belief, Debtor used the funds and/or receivables without explanation, reason, or purpose relating to Japas 38's business.

108.     Upon information and belief, Japas 38 transferred the funds and/or receivables into accounts to Japas NY in order to avoid making payments to Plaintiff under the Agreement.

109.     Debtor and Japas 38 immediately defaulted on their payment obligations under the Agreement.   Plaintiff only debited a total of $18,572.00 ACH payments of the $79,200.00 of Receivables purchased by Plaintiff from Japas 38.

110.     Plaintiff is entitled to an award of damages in the amount of $60,628.00, plus attorneys' fees, costs incurred, punitive damages, and such other relief as the Court deems just and proper.

## COUNT VII
### (Fraudulent Transfer Against Debtor, Japas 38, Japas NY, and Defendant John Doe)

111.    Plaintiff repeats and realleges the above allegations set forth in Paragraph 1 through 110 and incorporates the same herein as though more fully stated at length.

112.    Plaintiff also asserts actual intent fraudulent transfer claims against all Defendants with respect to the transfer of any and all assets to Japas NY and/or Defendant John Doe.

113.    Under Va. Code Ann. § 55-80 (and any other similar state law applicable here under), a transfer is voidable as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the Debtor made the transfer or incurred the obligation with actual intent to hinder, delay, or defraud any creditor of the Debtor.

114.    In addition to those facts specifically pled above, many of the additional factors considered as probative of fraudulent transfer under the applicable Virginia statutes are present in this case.  For example: (a) the transfers were to an insider; (b) the transfers were concealed; (c) the transfers occurred at times when the Debtor was threatened with litigation; (d) the Debtor's business operations was folding and the Debtor was in the process of re-establishing her business through a new company within the same business market; (e) the Debtor had concealed assets and information from creditors; (f) the Debtor received little, if any, value in exchange for the transfers; and (g) the transfers occurred when the Debtor was insolvent.

115.    The elements of "actual intent" are satisfied by the facts set forth herein.  Plaintiff is entitled to avoid all of the transfers to Japas NY and/or Defendant John Doe under Virginia law.

## COUNT VIII
### (Successor Liability against Japas NY)

116.    Plaintiff repeats and realleges the above allegations set forth in Paragraph 1 through 114 and incorporates the same herein as though more fully stated at length.

117.     On or about October 22, 2018, Japas 38 stopped operating.  Upon information and belief, Japas NY began operating at that same time.

118.     While it was in business, Japas 38 was located at 9 E. 38th Street, New York, New York 10016.

119.     Japas NY is located at 9 E. 38th Street, New York, New York 10016, the same address and building that Japas 38 was located and operated.

120.     Upon information and belief, Japas NY is the same entity as Japas 38.  For example, the online presences for the business remains under the name of Japas 38.

121.     Upon information and belief, the primary business of Japas 38 and Japas NY is identical.  Both are in the business of providing karaoke and Japanese fare.

122.     Upon information and belief, the transfer of assets from Japas 38 to Japas NY was done to avoid paying a debt owed by Japas 38 to Plaintiff.

123.     Accordingly, Plaintiff is entitled to an award of damages from Japas NY in the amount of $60,628.00, plus attorneys' fees, costs incurred, and such other relief as the Court deems just and proper.

## V.   **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff requests judgment against Debtor as follows:

A.     For an order providing that the debt owed by Debtor is non-dischargeable in the instant bankruptcy case, in any other proceeding under Title 11 to which this case may be converted, and in any future bankruptcy case filed by or against the Debtor;

B.     Judgment declaring the entire debt owed by Debtor to Plaintiff is nondischargeable pursuant to 11 U.S.C. § 523(a)(2)(A), 11 U.S.C. §523(a)(2)(B),  11 U.S.C. § 523(a)(4), and 11 U.S.C. § 523(a)(6);

C.     Judgment against Debtor and Japas 38 for conversion, fraud, and fraudulent transfer under Virginia State law;

D.    Judgment against Japas NY and Defendant John Doe for conversion and fraudulent transfer, and declaring Jay Entertainment Corp. d/b/a Japas NY as a successor in liability for the debt incurred by Japas 38;

E.    Granting Plaintiff an award of damages from Defendants in the amount of $60,628.00 plus interest;

F.    Granting attorneys' fees and costs herein incurred;

G.    Granting Plaintiff an award of punitive damages; and

H.    Granting such other and further relief as this Court may deem just and proper.

Dated:  April 8, 2019

DIAMOND McCARTHY LLP

*/s/ Charles M. Rubio*
Charles M. Rubio
295 Madison Avenue
27th Floor
New York, NY 10017
Phone: (212) 430-5400
crubio@diamondmccarthy.com

*Counsel to Strategic Funding Source Inc.*
*d/b/a Kapitus, Inc.*