**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

In re:

       IN SOOK STERLING

              Debtors.
_____/

STRATEGIC FUNDING SOURCE, INC.

        Plaintiff,

   v.

IN SOOK STERLING,

MTK 38 INC.,

   and

JAY ENTERTAINMENT CORP.
        Defendants.
_____/

Chapter 7

Case No. 19-10132-scc

Adv. Pro. No. 19-01111-scc

**STRATEGIC FUNDING SOURCE, INC.'S**
**<u>RESPONSE TO JAY ENTERTAINMENT MOTION TO DISMISS</u>**

# TABLE OF CONTENTS

INTRODUCTION ........................................................................................................................1

BACKGROUND.........................................................................................................................2

RESPONSE ..............................................................................................................................4

   I.   Plaintiff's Complaint Against Defendant is a Core
Proceeding .................................................................................................................4

   II.   This Court has, at a Minimum, "Related To" Jurisdiction ..............................................5

   III.   Abstention is Not Appropriate Because Strategic
Funding's Claims against Defendant Directly Affect
Debtor's Obligations....................................................................................................7

        The Factors Overwhelming Weigh Against
Abstention ...........................................................................................................8

   IV.   Strategic Funding Properly States its Claims Against
Defendant...................................................................................................................11

      A.   The Applicable Pleading Standards. ........................................................11

         Rule 8(a) Pleading Standards...................................................................11

         Rule 9(b) Pleading Standards...................................................................13

      B.   Strategic Funding Properly Asserts a Claim for
Conversion ................................................................................................13

      C.   Strategic Funding Properly Asserts a Claim for
Successor Liability....................................................................................15

      D.   Strategic Funding Properly Asserts a Claim for
Fraudulent Transfer..................................................................................16

      E.   Strategic Funding's Properly Seeks the Recovery of
Attorneys' Fees and Punitive Damages ...................................................17

CONCLUSION.........................................................................................................................18

# TABLE OF AUTHORITIES

## Cases

*Ashare v. Mirkin, Barre, Saltzstein & Gordon, P.C.*,
   106 Misc. 2d 866, 435 N.Y.S.2d 438 (Sup 1980)..................................................... 18

*Ashcroft v. Iqbal*,
   129 S. Ct. 1937 (2009) ........................................................................................... 12

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)...................................... 12

*Bridge v. Phoenix Bond & Indem. Co.*,
   553 U.S. 639 (2008).................................................................................................. 12

*Brower v. Cnty. of Inyo*,
   489 U.S. 593 (1989).................................................................................................. 12

*Celotex Corp. v. Edwards*,
   514 U.S. 300, 115 S. Ct. 1493 (1995)........................................................................ 5

*CH Holding Co. v. Miller Parking Co.*,
   E.D.Mich. 2015, 534 B.R. 308 .................................................................................. 7

*Colavito v. N.Y. Organ Donor Network, Inc.*,
   8 N.Y.3d 43, 827 N.Y.S.2d 96, 860 N.E.2d 713 (2006).......................................... 14

*CPC Livestock, LLC v. Fifth Third Bank, Inc.*,
   W.D.Ky.2013, 495 B.R. 332....................................................................................... 7

*Erickson v. Pardus*,
   551 U.S. 89 (2007).................................................................................................... 12

*Glinka v. Abraham & Rose Co.*,
   199 B.R. 484 (D. Vt. 1996)......................................................................................... 6

*Hunnicutt Co. v. TJX Co. (In re Ames Dep't Stores, Inc.)*,
   190 B.R. 157 (S.D.N.Y. 1995).................................................................................... 5

*In re Columbia Fireproof Door & Trim Co.*,
   168 F. 159 (E.D.N.Y. 1909)..................................................................................... 14

*In re LaRoche Indus., Inc.*,
   312 B.R. 249 (Bankr. D. Del. 2004) ....................................................................... 8, 9

*In re New York Int'l Hostel, Inc.*,
   157 B.R. 748 (S.D.N.Y. 1993).................................................................................... 6

*In re Text Messaging Artificial Litig.*,
   630 F.3d 622 (7th Cir. 2011) ................................................................................... 13

*Morrison v. YTB Int'l, Inc.*,
   649 F.3d 533 (7th Cir. 2011) ................................................................................... 12

*Nat'l Org. for Women, Inc. v. Scheidler*,
    510 U.S. 249 (1994)........................................................................... 12

*Pacor, Inc. v. Higgins*,
    743 F.2d 984 (3d Cir.1984)................................................................ 5

*Pappas v. Tzolis*,
    20 N.Y.3d 228, 958 N.Y.S.2d 656, 982 N.E.2d 576 (2012)................. 14

*Publicker Indus. Inc. v. United States (In re Cuyahoga Equipment Corp.)*,
    980 F.2d 110 (2d Cir.1992)................................................................ 5

*Scheuer v. Rhodes*,
    416 U.S. 232 (1974)........................................................................... 12

*Schumacher v. Richards Shear Co.*,
    59 N.Y.2d 239, 464 N.Y.S.2d 437, 451 N.E.2d 195 (1983)................. 15

*Tellabs v. Maker Issues & Rights Ltd.*,
    551 U.S. 308 (2007)........................................................................... 12

*Trans World Airlines, Inc. v. Karabu Corp.*,
    196 B.R. 711 (Bankr. D. Del. 1996) .................................................. 9

*Wood v. Moss*,
    _____ U.S. _____, 134 S. Ct. 2056 (2014)............................................ 12

*Wooster v. Sherwood*,
    25 N.Y. 278 (1862) ............................................................................ 14

**Statutes**

28 U.S.C. § 157(b)(2) .......................................................................... 4, 5, 11

60A N.Y. Jur. 2d Fraud and Deceit § 286 ............................................ 18

N.Y. U.C.C. § 9-502(a)(2) ................................................................... 3

U.C.C. § 9-210 .................................................................................... 4

Va. Code Ann. § 55-82.1 ..................................................................... 17

**Rules**

FED. R. CIV. P. 8(a)(1), (a)(2) ............................................................ 12, 13

FED. R. CIV. P. 8(e).............................................................................. 13

FED. R. CIV. P. 9 ................................................................................. 13

FED. R. CIV. P. 9(b).............................................................................. 13

**Other Authorities**

N.Y. Debt. & Cred. Law § 276-a ................................................................................ 17

WRIGHT & MILLER, FEDERAL PRACTICE AND PROCEDURE § 1298
(3d ed. April, 2013 Online Supp.) .......................................................................... 13

WRIGHT & MILLER, FEDERAL PRACTICE AND PROCEDURE § 1356
(3d ed. April, 2013 Online Supp.) .......................................................................... 12

Plaintiff, Strategic Funding Source, Inc. d/b/a Kapitus ("Strategic Funding" or the "Plaintiff"), by and through its attorneys, submits the following response to the Motion to Dismiss [ECF 10] filed by Jay Entertainment Corp. (the "Defendant") and respectfully states the following:

<strong><u>INTRODUCTION</u></strong>

Strategic Funding claims of conversion, fraud, and successor liability against Defendant directly relate to the underlying bankruptcy case because Strategic Funding seeks the return of Debtor's funds from Defendant, and each dollar recovered by Strategic Funding will equally reduce Strategic Funding's claims – as a creditor – against the Debtor. Thus, this Court has jurisdiction to hear Strategic Funding's claims and abstention is not appropriate here. Federal law, and case law in this Circuit, agree.

Important for the Court's understanding, the Complaint against Defendant also raises claims of fraud against the Debtor and objects to the dischargeability of the debt incurred by Debtor to Strategic Funding. In its objection to dischargeability, Strategic Funding alleges multiple counts of fraud under bankruptcy law against Debtor. Part of the allegations against Debtor – and against Defendant – is a coordinated scheme to transfer the Debtor's assets and business operations to Defendant, who continues to operate as Japas 38 (the same as Debtor), in an attempt to avoid Debtor's financial obligations.

Although Defendant asks the Court to inappropriately make factual determinations that Defendant is but merely a subsequent tenant of the location, Defendant's own supporting (and improper at this stage) evidence betrays it. For instance, the website that Defendant cites in its Motion states on the first page that Defendant has operated the establishment for 13 consecutive years – despite Defendant incorporating only in 2018. Further, the URL of the website is both www.JapasNY.com and www.Japas38NY.com – Debtor's business name is Japas 38. As

alleged by Defendant, this is not a new tenant operating a new business.  Instead, it is the continuation of Debtor's business operations, and an illegal attempt to avoid Debtor's financial obligations.  As opposed to an innocent subsequent tenant caught in the crossfire, Defendant is conspiring to defraud Strategic Funding from recovering on its claim.

Moreover, the conversion claim against Defendant properly asserts that Defendant is in possession of property that now belongs to Strategic Funding pursuant to its valid UCC lien. Defendant factually (and thus inappropriately at this stage) disputes this claim, and asserts it is the rightful owner because the property was allegedly abandoned by Debtor.  This argument of abandonment has no merit.  Strategic Funding has a valid legal interest in the property that the Debtor abandoned as a result of its valid UCC lien and Debtor's default.   Strategic Funding properly states a claim of conversion against Defendant for the property or its value that Defendant refuses to return.

As this is a related matter to the underlying bankruptcy matter, and as Plaintiff has sufficiently stated claims of conversion, fraud, and successor liability against Defendant under federal pleading standards, this Court should deny Defendant's Motion to Dismiss.  If this Court finds the claims are not sufficiently stated, however, Plaintiff requests leave of Court to amend its claims to properly state its claims and meet those federal pleading standards.

## BACKGROUND

On August 13, 2018, Strategic Funding entered into a Future Receivables Factoring Agreement (ACH) (together with the security agreement and guaranty, the "Agreement") with Mtk 38 Inc. d/b/a Japas 38 ("Japas 38").[1]   A copy of the Agreement is attached hereto as Exhibit A.  Under the Agreement, Strategic Funding purchased $79,200.00 of Japas 38's future

---

[1]       Complaint, ¶ 16.

receivables for the purchase price of $55,000.00.[2]  To secure Japas 38's obligations under the Agreement, the Agreement includes a pledge of "all personal property [of the Debtor] including all accounts, chattel paper, cash, deposit accounts, documents, equipment, general intangibles, instruments, inventory, or investment property" and Strategic Funding has perfected this security interest by recording a UCC-1 Financing Statement. A copy of the UCC-1 Financing Statement is attached hereto as <u>Exhibit B</u>.  As permitted by Section 9-502(a)(2) of the New York Uniform Commercial Code, Strategic Funding used a representative to file the UCC-1 Financing Statement.   A copy the secured party representative service agreement is attached hereto as <u>Exhibit C</u>.  Plaintiff performed its obligations under the Agreement and delivered to Debtor, as owner of Japas 38, $55,000.00.[3]

Almost immediately after its execution by the parties, Debtor and Japas 38 materially violated the terms of the Agreement.[4]  As the Agreement was executed by the parties on August 13, 2018, Plaintiff materially breached the Agreement a mere 2 months after its execution.[5]  Debtor paid only $18,572.00 of the $79,200.00 owed to Plaintiff, thereby leaving a secured balance of Receivables owed to Plaintiff in the amount of $60,628.00.[6]  Strategic Funding's Resolution Department made numerous attempts to reach Debtor and Japas 38, and on November 27, 2018, were advised that the restaurant had changed ownership.[7]

---

[2]      *Id*.

[3]      *Id*.

[4]      Complaint, ¶ 26.

[5]      Complaint, ¶ 27.

[6]      Complaint, ¶ 28.

[7]      Complaint, ¶ 26.

On or about October 22, 2018, Japas 38 stopped operating and reopened by the Defendant.[8]   The Defendant's business is located at 9 E. 38th Street, New York, New York 10016, the same address and building that Japas 38 was located and operated.[9]   Upon information and belief, Defendant is in receipt of assets that were transferred to it from Debtor and/or Japas 38 in an attempt to avoid the payment owed to the Plaintiff.[10]

The online presence for the business remains under the name of Japas 38.[11] Pursuant to the Defendant's website, the business has operated in the same establishment for 13 consecutive years.  The Defendant's business continues to use the same website and same phone number as Japas 38.  Just as Japas 38, Defendant's business provides karaoke and Japanese fare in its business operations.[12]

The Defendant has asserted legal rights under the Uniform Commercial Code that are the exclusive right of Japas 38 to assert.    Specifically, the Defendant has made a demand on Strategic Funding for the accounting under UCC §9-210 (the official comments to this section provide that  "this section gives the right to request information to the debtor only[.]")  A copy of the demand is attached hereto as Exhibit D.

<u>RESPONSE</u>

## I.   PLAINTIFF'S COMPLAINT AGAINST DEFENDANT IS A CORE PROCEEDING

Defendant contends that none of the claims against it are core proceedings.  Federal law disagrees.   Under 28 U.S.C. § 157(b)(2) exists a non-exhaustive list of core proceedings. Plaintiff cited this statute for its authority, but ignored § 157(b)(2)(H), "proceedings to

---

[8]      Complaint, ¶ 38.

[9]      *Id.*

[10]      Complaint, ¶ 39.

[11]      Complaint, ¶ 40.

[12]      *Id.*

determine, avoid, or recover fraudulent conveyances." Plaintiff's actions against Defendant seek exactly that – the avoidance of fraudulent transfers from Debtor to Defendant.

Plaintiff also ignores § 157(b)(2)(K), "determinations of the validity, extent, or priority of liens". In its conversion claims, Strategic Funding seeks a determination of the validity of its lien against Debtor's property, and its priority over Defendant's claim that the property belongs to it due to Debtor's alleged (and rather convenient) abandonment.

Accordingly, this is a Core Proceeding under the statutory authority cited favorably by Defendant in its Motion, and should proceed in this Court.

## II.  THIS COURT HAS, AT A MINIMUM, "RELATED TO" JURISDICTION

There is nothing novel about this Court's jurisdiction over Strategic Funding's claims. As admitted by Defendant, this Court has jurisdiction to hear claims related to Debtor's bankruptcy estate.  A "related" matter, for purposes of subject matter jurisdiction, is one in which the outcome of the proceeding could have any conceivable effect on the bankruptcy estate.[13] Here, that exists for at least two reasons: 1) Strategic Funding seeks from Defendant the assets that Debtor improperly transferred to it; and 2) any recovery against Defendant will likewise reduce Debtor's obligations to Strategic Funding.

"Related to" jurisdiction is to be broadly interpreted to include all matters connected with the bankruptcy estate.[14]  An action is "related to the bankruptcy if the outcome could alter the debtor's rights, liabilities, options, or freedom of action (either positively or negatively) and which in any way impacts upon the handling and administration of the bankrupt estate."[15] Where "claims could conceivably alter the Debtor's liabilities, the claims are 'related to' the

---

[13]     *Publicker Indus. Inc. v. United States (In re Cuyahoga Equipment Corp.),* 980 F.2d 110, 114 (2d Cir.1992).

[14]     *Celotex Corp. v. Edwards*, 514 U.S. 300, 308, 115 S. Ct. 1493, 1499 (1995).

[15]     *Hunnicutt Co. v. TJX Co. (In re Ames Dep't Stores, Inc.),* 190 B.R. 157, 160 (S.D.N.Y. 1995) (citing *Pacor, Inc. v. Higgins,* 743 F.2d 984, 994 (3d Cir.1984)).

bankruptcy and therefore the bankruptcy court has jurisdiction over the matter pursuant to Section 1334(b).[16]

Despite Defendant's conclusory assertion that related to jurisdiction does not exist, this Court does have jurisdiction over Strategic Funding's claims against Defendant for conversion, fraudulent transfer, and successor liability. As demonstrated in *Glinka*, a case affirmed by the 2nd Court of Appeals, these types of claims are related to the bankruptcy estate as they affect Debtor's potential liability.[17] In *Glinka*, the debtor's primary secured creditor and the trustee brought an adversary proceeding to set aside allegedly fraudulent transfers and to recover from transferee on state law theories.[18] In holding that similar conversion and misappropriation claims were related to the bankruptcy case, and exercising jurisdiction, the Court stated relevantly:

> The conversion and misappropriation claims, as well as the claims based on provisions of the Bankruptcy Code, are related to the bankruptcy case because the outcome has the potential to affect the estate of the debtor, and to alter the distribution of the debtor's estate to BNP and other creditors. Because the challenged counts involve claims which conceivably could affect the bankruptcy case, the Court has "related to" jurisdiction over the claims, and Federal Plastics' Motion to Dismiss is Denied.[19]

*Glinka* is not alone in finding these types of claims fall under a Court's related to jurisdiction. In *CPC Livestock*, the Court allowed multiple claims, including fraud and conversion, against non-debtor lenders as "many plaintiffs had filed proofs of claim against bankruptcy estate and those claims would be reduced or extinguished to the extent that plaintiffs prevailed in removed action, and plaintiffs' recovery against lender would affect estate's

---

[16]     *In re New York Int'l Hostel, Inc.*, 157 B.R. 748, 751 (S.D.N.Y. 1993).

[17]     *Glinka v. Abraham & Rose Co.*, 199 B.R. 484, 491 (D. Vt. 1996), *aff'd sub nom. In re Housecraft Indus. USA, Inc.*, 310 F.3d 64 (2d Cir. 2002).

[18]     *Id.*

[19]     *Id.*

liabilities by increasing lender's claims for indemnification and contribution."[20] As is clear, related to jurisdiction applies where the recovery against a defendant may affect the claims a creditor has against the debtor.

Here, Strategic Funding – as a creditor of Debtor – seeks to set aside fraudulent transfers to Defendant, and seeks damages for Defendant's conversion and as Defendant's successor in interest. These clearly meet the federal standard for related to jurisdiction as any recovery against Defendant will (dollar to dollar) reduce Strategic Funding's claims as a creditor against Debtor. In other words, Strategic Funding's claims against Defendant affects Debtor's liability.

Providing an even closer nexus to the bankruptcy estate, Strategic Funding alleges that Defendant is actually the successor of Debtor, and demonstrates this, in part, through Defendant's own cited website asserting it has been in business for 13 consecutive years at its location, despite incorporating only in 2018, and as the web address (www.Japas38NY.com) contains Debtor's business name.

For the foregoing reasons, this Court has related to jurisdiction to hear Strategic Funding's claims of conversion, fraudulent transfer, and successor liability against Defendant.

### III. ABSTENTION IS NOT APPROPRIATE BECAUSE STRATEGIC FUNDING'S CLAIMS AGAINST DEFENDANT DIRECTLY AFFECT DEBTOR'S OBLIGATIONS

Strategic Funding filed its adversary action against Debtor seeking a determination of nondischargeability of Debtor's obligations to Strategic Funding. As part of these allegations, Strategic Funding asserts that Debtor committed a fraud against Strategic Funding by transferring assets to Defendant, that Defendant is the successor in interest of Debtor, and that the personal property in Defendant's possession is subject to Strategic Funding's UCC lien

---

[20]     *CPC Livestock, LLC v. Fifth Third Bank, Inc.*, W.D.Ky.2013, 495 B.R. 332. *See also CH Holding Co. v. Miller Parking Co.*, E.D.Mich. 2015, 534 B.R. 308 (finding "related to" jurisdiction for creditor's conversion claims against non-debtor).

against Debtor. In the same action, Strategic Funding seeks the recovery of those fraudulent transfers, and Debtor's property secured by Strategic Funding's valid UCC lien, from Defendant. As these claims are intertwined, and as the objection to dischargeability may only be brought in the bankruptcy proceeding, this Court is best positioned to adjudicate Strategic Funding's claims.

Indeed, if the claims are separated, with Strategic Funding forced to pursue two separate actions on the same issue in different courts, judicial resources would be wasted. The same issues would be subject to discovery in two separate courts, and Strategic Funding would face the legitimate risk of two conflicting judgments on whether or not Defendant is the recipient of fraudulent transfers from Debtor. When reviewed in light of the abstention factors under federal law, these issues warrant the Court denying Defendant's request for abstention, even if this matter is considered non-core.

**The Factors Overwhelming Weigh Against Abstention**

Under federal law, to determine whether abstention is appropriate, bankruptcy courts weigh a series of factors, each of which is discussed below.[21] In its Motion, Defendant did not evaluate the factors of abstention. Instead, Defendant pays lip service to their existence, ignores the intertwined nature of the claims against Debtor and Defendant, and makes conclusory states that abstention is appropriate.

Defendant also cites cases bearing little similarity to Strategic Funding's claims against it. For instance, in *In re LaRoche Indus., Inc.*, the Court granted abstention in large part because the claims "will have no effect on the administration of the Debtor's estate."[22] The opposite is true here, where each dollar recovered from Defendant will reduce Debtor's obligation to Strategic Funding. Defendant's also cite *Trans World Airlines, Inc. v. Karabu Corp.*, which

---

[21] *See In re LaRoche Indus., Inc.*, 312 B.R. 249, 255 (Bankr. D. Del. 2004).

[22] 312 B.R. 249, 255 (Bankr. D. Del. 2004).

relates solely to an interpretation of a New York contract under New York law, and is inapplicable here.[23]  Neither are persuasive here.

Conversely, each of the substantive factors, including judicial efficiency, the feasibility of two separate actions on the same factual issues, the burden on the court, and the relatedness of the claims to the bankruptcy matter, heavily weigh against abstention.  The following analysis of the abstention factors demonstrates how heavily they favor denial of Defendant's request:

1. **The Effect Or Lack Thereof On the Efficient Administration of the Estate**

   - As the claims against Defendant and Debtor are intertwined, and the recovery against Defendant will directly affect Debtor's obligations to Strategic Funding. Accordingly, this factor weighs against abstention.

2. **The Extent To Which State Law Issues Predominate Over Bankruptcy Issues**

   - While Strategic Funding's claims against Defendant involve state law, they are intimately intertwined with bankruptcy law regarding the nondischargeability of Debtor's obligations to Strategic Funding.

   - This includes issues of whether Defendant received fraudulent transfers from Strategic Funding, and whether Defendant is the successor in interest of the Debtor.  Accordingly, this factor weights against abstention.

3. **The Difficulty Or Unsettled Nature Of Applicable State Law**

   - This factor slightly favors abstention as the claims against Defendant are not novel.  However, this is not dispositive, nor is it one of the substantive factors courts weigh as more important.[24]

4. **The Presence of a Related Proceeding Commenced In State Court Or Other Non-Bankruptcy Court**

   - No related proceeding exists in state court or other non-bankruptcy court. Therefore, this weighs against abstention.

---

[23]  196 B.R. 711, 714 (Bankr. D. Del. 1996).  Notably, the portion quoted by Defendant does not actually appear in the case text.

[24]  *See In re LaRoche Indus., Inc.*, 312 B.R. 249, 255 (Bankr. D. Del. 2004).

**5. The Jurisdictional Basis, If Any, Other Than Section 1334**

- Strategic Funding seeks assets transferred to Strategic Funding from Debtor, which claims against Debtor are subject to bankruptcy law. Even if this Court determines only section 1334 conveys jurisdiction, this is non-substantive and far less persuasive than those that weigh against abstention.

**6. The Degree of Relatedness Or Remoteness of the Proceeding To the Main Bankruptcy Case**

- This substantive factor weighs heavily against abstention. The claims against Defendant are intertwined with the proceedings in the main bankruptcy and Strategic Funding's claims against Debtor.

- The claims involve Debtor property, seek a determination that Defendant is the successor in interest of Debtor, and seek the recovery of assets fraudulent transferred from Debtor to Defendant.

**7. The Substance Rather Than the Form of An Asserted "Core" Proceeding**

- As this case raises issues of Debtor's fraudulent transfer under bankruptcy law, this factor weights strongly against abstention.

**8. The Feasibility of Severing State Law Claims From Core Bankruptcy Matters To Allow Judgments To Be Entered In State Court With Enforcement Left To The Bankruptcy Court**

- This factor weighs against abstention as it is not feasible to separate Strategic Funding's Complaint against Debtor seeking a determination that it fraudulently transferred assets to Defendant from Strategic Funding's Complaint against Defendant for those assets fraudulently transferred to it.

- If abstention occurs, there is a serious risk of conflicting judgments on the same factual and legal issues.

**9. The Burden of the Court's Docket**

- This factor also weighs against abstention as the case will remain on the Court's docket regardless of the Court's decision on abstention due to Strategic Funding's Complaint against Defendant for the nondischargeability of its debt owed.

- As part of the complaint against Debtor includes its fraudulent transfers to Defendant, those issues will be decided by this Court regardless of whether it grants abstention. Thus, there is no additional burden to the Court by denying Defendant's request.

**10. The Likelihood That the Commencement of the Proceeding In Bankruptcy Court Involves Forum Shopping By One of the Parties**

- There is no forum shopping here. Instead, Strategic Funding was required to bring its Complaint against Debtor in this Court, and brought related to claims against Defendant for efficiency purposes. Accordingly, this factor weighs against abstention.

**11. The Existence of a Right To a Jury Trial**

- Although Defendant asserts a right to trial by jury, that right would not be removed as Defendant would be entitled to *de novo* review from the district court. Thus, if at all, this factor weights only slightly in favor of abstention.

**12. The Presence of Non-Debtor Parties**

- This case involves both the Debtor and a non-debtor. The presence of Debtor and the intertwined nature of the claims should weigh against abstention.

Reviewing the factors separately, overwhelmingly this case weighs against abstention. The issues relate directly to the bankruptcy estate, Strategic Funding seeks the recovery of assets fraudulent transferred to Defendant by Debtor, and Strategic Funding seeks the recovery of Debtor's property subject to Strategic Funding's valid lien (which actually make this matter a core proceeding under 28 U.S.C. § 157(b)(2)). Further, the claims against both Debtor and Defendant substantially overlap, including the same factual and legal determinations to be made, such that abstention could lead to the untenable result of two courts ruling differently on the same issues. In light of the above analysis, this Court should deny Strategic Funding's request for abstention.

### IV. STRATEGIC FUNDING PROPERLY STATES ITS CLAIMS AGAINST DEFENDANT

**A. The Applicable Pleading Standards.**

#### Rule 8(a) Pleading Standards.

While the standards for dealing with Rule 12(b)(6) motions are familiar, it cannot be stressed enough that "the purpose of a motion under Federal Rule 12(b)(6) is to test the formal

sufficiency of the statement of the claim for relief;" and that "the motion is not a procedure for resolving a contest between the parties about the facts or the substantive merits of the plaintiff's case."[25] That is so because the defense motions so often attempt to argue contested facts, and not the formal sufficiency of the Complaint.

The Federal Rules of Civil Procedure require only "notice" pleading, and Rule 8(a)(2), the operative rule here, is intended to and does set forth "liberal pleading standards."[26] In practice, that means that a plaintiff's complaint need only set forth "a short and plain statement" of the grounds for the court's jurisdiction and a plausible claim for relief.[27] The purpose of that Rule 8(a)(2) statement is to provide "fair notice" of the claim and the grounds upon which it rests.[28] The pleading of specific facts is unnecessary.[29]

Three basic rules have long governed a court's analysis of motions like the Defendant's. The well-established rules, articulated by the U.S. Supreme Court, are:

(1)    The Court must accept as true all factual allegations contained in the complaint;[30]

(2)    The Court must construe a plaintiff's complaint, and draw all reasonable inferences from that complaint, in the light most favorable to the Plaintiff;[31] and

(3)    The Court must liberally construe a plaintiff's pleadings "so as to do justice."[32]

---

[25]    WRIGHT & MILLER, FEDERAL PRACTICE AND PROCEDURE § 1356 (3d ed. April, 2013 Online Supp.) (hereafter "Wright & Miller").

[26]    *Erickson v. Pardus*, 551 U.S. 89, 94 (2007); see also FED. R. CIV. P. 8(a)(1), (a)(2); *Nat'l Org. for Women, Inc. v. Scheidler*, 510 U.S. 249, 256 (1994).

[27]    *Morrison v. YTB Int'l, Inc.*, 649 F.3d 533, 538 (7th Cir. 2011); *see also Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) ("To survive a [Rule 12(b)(6)] motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'").

[28]    *Erickson*, 551 U.S. at 93 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 1964, 167 L. Ed. 2d 929 (2007)).

[29]    *See Erickson*, 551 U.S. at 93 (quoting *Twombly*, 550 U.S. at 555).

[30]    *See, e.g., Wood v. Moss*, _____ U.S. _____, 134 S. Ct. 2056, 2065 n.5 (2014); *Iqbal*, 129 S. Ct. at 1949; *Bridge v. Phoenix Bond & Indem. Co.*, 553 U.S. 639, 642 n.1 (2008); *Tellabs v. Maker Issues & Rights Ltd.*, 551 U.S. 308, 322 (2007), *Erickson*, 551 U.S. at 94.

[31]    *See, e.g., Brower v. Cnty. of Inyo*, 489 U.S. 593, 598 (1989); *Scheuer v. Rhodes*, 416 U.S. 232, 235 (1974).

When this Court examines Strategic Funding's Complaint in light of the foregoing, liberally construes that Complaint to do justice, accepts its factual allegations as true, and views them in the light most favorable to Strategic Funding—all as required by law—it is abundantly clear Strategic Funding has pleaded "enough facts to state a claim to relief that is plausible on its face," and that the Defendant have been given fair notice of Strategic Funding's claims and of the grounds for those claims.[33]   Accordingly, Strategic Funding's Complaint has passed its formal "sufficiency test," and the Defendant's Motion to Dismiss must be denied in all respects.

### Rule 9(b) Pleading Standards.

The Defendant also moves to dismiss Strategic Funding's fraudulent transfer claim for an alleged failure to plead them in accordance with Rule 9(b).  Rule 9(b) applies to averments of fraud or mistake.[34]  That rule does not, however, stand alone. It must be read in conjunction with Rule 8(a)'s requirement of a "short and plain statement of the claim." As Wright & Miller put it: "Rule 9 must be read in light of the basic pleading philosophy set forth in Rule 8 . . . [and] [t]his means that even those portions of Rule 9 that require specific or detailed allegations should not be construed in an unduly strict fashion."[35]

## B.  Strategic Funding Properly Asserts a Claim for Conversion

"A conversion takes place when someone, intentionally and without authority, assumes or exercises control over personal property belonging to someone else, interfering with that

---

[32]      See FED. R. CIV. P. 8(e).

[33]      Or, in Judge Posner's words, that the Complaint shows a "non-negligible probability that the claim is valid." See In re Text Messaging Artificial Litig., 630 F.3d 622, 629 (7th Cir. 2011).

[34]      Fed. R. Civ. P. 9(b).

[35]      Wright & Miller § 1298 ("[I]t must be remembered that the federal rules contemplate a de-emphasis of the pleadings and a general simplicity in pleading practice.  Thus, although Rule 9(b) calls for fraud to be pleaded with particularity, the allegations still must be as short, plain, simple, direct, and concise as is reasonable under the circumstances.").

person's right of possession."[36]  "Two key elements of conversion are (1) plaintiff's possessory right or interest in the property and (2) defendant's dominion over the property or interference with it, in derogation of plaintiff's rights."[37]

Under long-settled New York law, a party that takes possession of property subject to a valid lien gains no title, and is guilty of conversion as to the holder of the valid lien.[38]  This, of course, presents the obvious conclusion that where a valid lienholder (such as Strategic Funding) demands property subject to a valid lien, and a third-party without a superior interest refuses to turn over the subject property, they are guilty of conversion.

Here, Strategic Funding's alleges that it has a superior interest in the property that Defendant now possesses, and which is subject to Strategic Funding's lien against Debtor.  This includes the property that remained at the location.  Although Defendant claims the property was abandoned, such abandonment would not remove Strategic Funding's rights to the property.  Moreover, the question of abandonment is a factual determination that is inappropriate at this stage of litigation.

Strategic Funding also asserts that Defendant received Debtor's receivables as part of the reopening of the bar in the same location, with a website that claims it has remained operational for 13 years, and under the same name (as demonstrated by Defendant's web address: www.Japas38NY.com).  The website and phone number are the same. The business appears to have never closed and remained in continuous operation when the ownership changed to the Defendant.

---

[36]     *Colavito v. N.Y. Organ Donor Network, Inc.,* 8 N.Y.3d 43, 49–50, 827 N.Y.S.2d 96, 860 N.E.2d 713 (2006).

[37]     *Pappas v. Tzolis,* 20 N.Y.3d 228, 234, 958 N.Y.S.2d 656, 982 N.E.2d 576 (2012) (quoting *Colavito,* 8 N.Y.3d at 50, 827 N.Y.S.2d 96, 860 N.E.2d 713).

[38]     *See In re Columbia Fireproof Door & Trim Co.,* 168 F. 159, 160 (E.D.N.Y. 1909) (citing *Wooster v. Sherwood*, 25 N.Y. 278, 278 (1862).

Strategic Funding has met its pleading burden to proceed with its conversion claims in this matter, and Defendant's Motion should be denied accordingly.

## C.  Strategic Funding Properly Asserts a Claim for Successor Liability

In general, under New York law a corporation will be liable for the wrongful acts of its predecessor where the successor entity:

(1)     expressly or impliedly assumes its predecessor's tort liability;

(2)     there is a consolidation or merger of seller and purchaser;

(3)     the purchasing corporation is a mere continuation of the selling corporation; or

(4)     the transaction is entered into fraudulently to escape such obligations.[39]

Strategic Funding sufficiently alleges both the third and fourth circumstance where successor liability exists under New York law.  Although Defendant denies these circumstances, at this stage of litigation it is Strategic Funding's allegations that control, not Defendant's denials.

Meeting both the third and fourth circumstance outlined above, Strategic Funding alleges with sufficient specificity that Defendant's operation of the same business, at the same location, with the same advertised name online, is merely a continuation of Debtor (meeting the third circumstance), and was done to fraudulently escape Debtor's obligations (meeting the fourth circumstance).    The relevant paragraphs of Strategic Funding's Complaint outlining its allegations are below:

38.     Furthermore, in an effort to avoid the debt owed to Strategic Funding, on or about October 22, 2018, Japas 38 stopped operating and reopened as Jay Entertainment Corp. d/b/a Japas NY ("Japas NY"). Japas NY is located at 9 E. 38th Street, New York, New York 10016, the same address and building that Japas 38 was located and operated.

---

[39]     *Schumacher v. Richards Shear Co.,* 59 N.Y.2d 239, 244, 464 N.Y.S.2d 437, 451 N.E.2d 195 (1983) (citations omitted).

39.   The restaurant is now owned and operated by a Jay Entertainment Corp. d/b/a Japas NY, which was originally incorporated in New Jersey and then formed as a New York Corporation on September 21, 2018, and which is defined above as Japas NY. An application for a Liquor License was made by Japas NY on or about November 15, 2018. Upon information and belief, Japas NY is in receipt of assets that were transferred to it from Debtor and/or Japas 38 in an attempt to avoid the payment of Receivables purchased by, and which rightfully belong to, Strategic Funding.

40.   Additionally, the online presence for the business remains under the name of Japas 38. Just as Japas 38, Japas NY provides karaoke and Japanese fare in its business operations.

120.  Upon information and belief, Japas NY is the same entity as Japas 38. For example, the online presences for the business remains under the name of Japas 38.

121.  Upon information and belief, the primary business of Japas 38 and Japas NY is identical. Both are in the business of providing karaoke and Japanese fare.

122.  Upon information and belief, the transfer of assets from Japas 38 to Japas NY was done to avoid paying a debt owed by Japas 38 to Strategic Funding.[40]

As Strategic Funding appropriately alleges that Defendant is liable as a successor in interest, Defendant's Motion should be denied by this Court.

**D.  Strategic Funding Properly Asserts a Claim for Fraudulent Transfer**

Under the applicable law, any conveyance that is made with an actual intent to delay, hinder, or defraud present or future creditors is considered fraudulent.  In its Motion, Defendant ignores the bulk of the allegations against it, and the sufficient details asserted by Strategic Funding against Defendant.  Meeting its pleading requirements, Strategic Funding alleges the who, what, when, where, and how of the fraud perpetuated by Defendant.

Specifically, Strategic Funding alleges the time period of October 2018 as when the fraudulent transfer occurred, alleges that the assets transferred include the property used to operate the business, alleges the specific companies that perpetrated the fraud, alleges that the

---

[40]   Complaint, ¶¶ 38, 39, 40, 120, 121, 122.

purpose of the fraudulent transfer of assets was to avoid creditors such as Strategic Funding, and alleges specific facts that demonstrate Defendant's business advertises as a continuation of business in both name and history. By its allegations, Strategic Funding has properly asserted under federal pleading standards that the transfer of business property, in conjunction with the transfer of the business operations, was a fraudulent series of actions that were taken to avoid Debtor's financial obligations to Strategic Funding and the valid lien Strategic Funding holds against the business property.

For these reasons, Strategic Funding has stated with sufficiency the allegations of fraudulent transfer against Defendant.

## E. <u>Strategic Funding's Properly Seeks the Recovery of Attorneys' Fees and Punitive Damages</u>

Under both Virginia and New York law, pursuant to which Strategic Funding brings its claims for fraud in its Complaint against Debtor and Defendant, a plaintiff is entitled to an award of attorneys' fees in fraudulent transfer actions, including against transferees.[41] Here, Strategic Funding alleges fraudulent transfers against Defendant, and therefore may properly seek the recovery of its attorneys' fees. Under controlling law, therefore, Defendant's Motion should be denied as Strategic Funding may properly seek the recovery of its attorneys' fees.

Punitive or exemplary damages may be recovered for the conversion where the circumstances show that the conversion was accompanied by malice, insult, reckless and willful

---

[41] N.Y. Debt. & Cred. Law § 276-a ("In an action or special proceeding brought by a creditor, receiver, trustee in bankruptcy, or assignee for the benefit of creditors to set aside a conveyance by a debtor . . . the justice or surrogate presiding at the trial shall fix the reasonable attorney's fees of the creditor . . . [and] creditors shall have judgment therefor against the debtor and the transferee who are defendants in addition to the other relief granted by the judgment."; Va. Code Ann. § 55-82.1 ("Upon a finding of fraudulent conveyance pursuant to § 55-80 [the fraudulent transfer statute], the court may assess sanctions, including such attorney fees, against all parties over which it has jurisdiction who, with the intent to defraud and having knowledge of the judgment, participated in the conveyance.")

disregard of the plaintiff's rights, or other proof showing the aggravated nature of the act.[42]  To be awarded punitive damages for a Defendant's fraud, its conduct must have been malicious and reckless in its nature; or gross, wanton, or willful, evincing a high degree of moral culpability; or moral turpitude; or such a high degree of moral turpitude or wanton dishonesty as to imply criminal indifference to civil obligations.[43]

In its Complaint, Strategic Funding asserts an intentional scheme to defraud the Debtor's creditors, including Strategic Funding, through a deceptive transfer of Debtor's assets and business to Defendant.  By this coordinated scheme, Strategic Funding asserts Defendant's conduct was intentional, malicious, willful, and constituted wanton dishonesty.  As Strategic Funding's claims for conversion, fraudulent transfers, and successor liability allege conduct required to proceed with punitive damages, Defendant's Motion should be denied.

## CONCLUSION.

For all of the foregoing reasons, Plaintiff Strategic Funding Source, Inc. d/b/a Kapitus respectfully requests that this Court deny Defendant Jay Entertainment Corp.'s Motion to Dismiss.  Alternatively, Plaintiff respectfully requests leave to amend should the Court determine additional factual support of the allegations is required.

---

[42]     *Ashare v. Mirkin, Barre, Saltzstein & Gordon, P.C.*, 106 Misc. 2d 866, 435 N.Y.S.2d 438 (Sup 1980), judgment aff'd as modified on other grounds, 81 A.D.2d 650, 441 N.Y.S.2d 408 (2d Dep't 1981).

[43]     *See* 60A N.Y. Jur. 2d Fraud and Deceit § 286 (citing the standards used by New York courts, and citing numerous cases supporting an award of punitive damages).

Dated: New York, New York
       June 10, 2019

DIAMOND McCARTHY LLP

*/s/ Charles M. Rubio*
Charles M. Rubio
295 Madison Avenue
27th Floor
New York, NY 10017
Phone: (212) 430-5400
crubio@diamondmccarthy.com

*Counsel to Strategic Funding Source Inc.*
*d/b/a Kapitus*