# Strategic Funding Source, Inc

**Serviced through Colonial Funding Network, Inc.**
**2500 Wilson Boulevard Suite 350, Arlington, Virginia 22201**
**Ph. (888) 959-4323**
**Contract ID# 1362081**

## FUTURE RECEIVABLES FACTORING AGREEMENT (ACH)

Agreement dated August 13 2018 between **Strategic Funding Source, Inc ("PURCHASER")** and each of the merchant(s) listed below and on any attached addendum as applicable ("the **Merchant**") (the " Merchant Agreement" or the "Agreement").
(Month)(Day)(Year)

**MERCHANT INFORMATION**

Merchant's Legal Name: MTK 38, INC.
D/B/A: Japas 38 State of Incorporation / Organization: NY
Type of entity: Corporation
Physical Address: 9 East 38th St City: New York State: NY Zip: 10016
Mailing Address: City: State: Zip:
Date business started (mm/yyyy): 04/2002 Federal ID# 45-4127757

**PURCHASE AND SALE OF FUTURE RECEIVABLES**

Merchant hereby sells, assigns and transfers to PURCHASER in consideration of the funds provided ("Purchase Price") as specified below, all of Merchant's future receipts, accounts, contract rights and other obligations arising from or relating to the payment of monies from Merchant's customers and/or other third party payors (collectively the "Receipts" defined as all payments made by cash, check, electronic transfer or other form of monetary payment in the ordinary course of the merchant's business), until such time as the "Receipts Purchased Amount" or "Purchased Amount" has been delivered by Merchant to PURCHASER. The Receipts Purchased Amount shall be paid to PURCHASER by the Merchant irrevocably authorizing only one depositing account acceptable to PURCHASER (the "Account") to remit the percentage specified below (the "Specified Percentage") of the Merchant's Receipts, until such time as PURCHASER receives payment in full of the Receipts Purchased Amount. In consideration of servicing the account, the Merchant hereby authorizes PURCHASER to ACH Debit the "Specified Amount" from the merchant's bank account as the base payment credited against the Specified Percentage due. The Specified Amount is intended to represent the Specified Percentage of Receipts. For as long as no Event of Default has occurred, once each calendar month, Merchant may request that PURCHASER adjust the Specified Amount to more closely reflect the Merchant's actual Receipts. Merchant agrees to provide PURCHASER any information requested to assist in this reconciliation. Upon verification of such information, PURCHASER shall adjust the Specified Amount on a going-forward basis to more closely reflect the Merchant's actual Receipts. After each adjustment made pursuant to this paragraph, the new dollar amount shall be deemed the Specified Amount until any subsequent adjustment. **It is the Merchants responsibility to provide bank statements for any and all bank accounts held by the Merchant to reconcile the payments made against the Specified Percentage permitting PURCHASER to debit or credit the difference to the merchant so that payment equals the Specified Percentage.** Merchant understands that it is responsible for ensuring that funds adequate to cover the amount to be debited by PURCHASER remain in the account. Merchant will be held responsible for any fees incurred by PURCHASER resulting from a rejected ACH attempt or an event of default PURCHASER is not responsible for any overdrafts or rejected transactions in the Merchants account which may result from the scheduled ACH debits under the terms of this agreement. Notwithstanding anything to the contrary in this Agreement or any other agreement between PURCHASER and Merchant, upon the violation of any provision contained in Section 1.9 of the MERCHANT AGREEMENT TERMS AND CONDITIONS or the occurrence of an Event of Default under Section 3 of the MERCHANT AGREEMENT TERMS AND CONDITIONS, the Specified Percentage shall equal 100%. A list of all applicable fees is set forth in Appendix A.

**Purchase Price: $55,000.00** **Specified Percentage: 6%** **Specific Daily Amount: $387.00** **Receipts Purchased Amount: $79,200.00**

**THE TERMS, DEFINITIONS, CONDITIONS AND INFORMATION SET FORTH THE SECURITY AGREEMENT AND GUARANTEE ARE HEREBY INCORPORATED IN FULL AND MADE A PART OF THIS AGREEMENT.**

**MERCHANT #1**

**By** **Insook Sterling, Owner** DocuSigned by: Insook Sterling E3DFB62E59254F5...
**(Print Name and Title)** **(Signature)**

**MERCHANT #2**

**By** ______________________ ______________________
**(Print Name and Title)** **(Signature)**

**OWNER/GUARANTOR #1**

**By** **Insook Sterling, Owner** DocuSigned by: Insook Sterling E3DFB62E59254F5...
**(Print Name and Title)** **(Signature)**



EXHIBIT A

**OWNER/GUARANTOR #2**

**Bv** ______________________________ ______________________________

**(Print Name and Title)** **(Signature)**

**Strategic Funding Source, Inc**

**By** Anthony Rose ______________________________ DocuSigned by: Anthony Rose 58369D04A0AB46D... ______________________________

**(Company Officer)** **(Signature)**

To the extent set forth herein, each of the parties is obligated upon his, her or its' execution of the Agreement to comply with all terms of this Agreement. Each of above-signed Merchant and Owner(s) represents and warrants that: (1) he or she is authorized to sign this Agreement for Merchant, legally binding the Merchant to deliver the receivables as agreed, and (2) the information provided herein, and in the applications provided, documents submitted, financial information provided, and in any interviews during underwriting is true, accurate and complete in all respects. If any information provided to PURCHASER is determined to be false or misleading, Merchant shall be deemed in material breach of all agreements between Merchant and PURCHASER and Owner(s) shall be personally liable for the Merchant's obligations under the Personal Guarantee of Performance. Merchant and each of the above-signed Owners authorizes PURCHASER, its agents and representatives and any credit reporting agency engaged by PURCHASER, to (i) investigate any references given or any other statements or data obtained from or about Merchant or any of its Owners for the purpose of this Agreement, and (ii) obtain credit report at any time now or for so long as Merchant and/or Owners(s) continue to have any obligation owed to PURCHASER.

**ANY MISREPRESENTATION MADE BY MERCHANT OR OWNER IN CONNECTION WITH ANY APPLICATION FOR FUNDING, IN ANY DOCUMENT SUBMITTED AND/OR THIS AGREEMENT WILL RESULT IN A SEPARATE CAUSE OF ACTION, INCLUDING BUT NOT LIMITED TO A CLAIM AGAINST THE OWNER/GUARANTOR FOR FRAUD OR FRAUDULENT INDUCEMENT**

colonialfundingnetwork
YOUR TRUSTED SERVICE PROVIDER

**AUTHORIZED SUB-SERVICING AGENT – Colonial Funding Network, Inc.**

**PURCHASER, as Agent, may perform any and all of its duties and exercise its rights and powers by or through any one or more sub-agents. Colonial Funding Network, Inc. (Colonial) is the Authorized Sub-Servicing Agent of the PURCHASER for this contract providing administrative, bookkeeping, reporting and support services for the PURCHASER and the Merchant. Colonial is acting as agent for services including but not limited to background checks, credit checks, general underwriting review, filing UCC-1 security interests, cash management, account reporting, servicing, collections and remit capture. Merchant and Owner/Guarantor acknowledge and agree that PURCHASER has granted Colonial all right and authority as its general agent to take any and all actions to enforce the terms of this Agreement, through legal actions in the name of PURCHASER, or otherwise. Any and all authorizations and/or rights granted to PURCHASER under this Agreement are hereby granted to Colonial, as servicer and general agent for PURCHASER. Colonial is not a credit card processor, or in the business of processing credit cards. Merchant hereby acknowledges that in no event will Colonial be liable for any claims made against the PURCHASER or the Processor under any legal theory for lost profits, lost revenues, lost business opportunity, exemplary, punitive, actual, special, incidental, indirect or consequential damages, each of which is waived by the Merchant and Owner/Guarantor.**

**MERCHANT #1**

**By** Insook Sterling, Owner ______________________________ DocuSigned by: Insook Sterling E3DFB62E59254F5... ______________________________

**(Print Name and Title)** **(Signature)**

# MERCHANT AGREEMENT TERMS AND CONDITIONS

## I. GENERAL TERMS

**1.1 Merchant Deposit Agreement.** Merchant shall execute an agreement (the "Merchant Deposit Agreement") acceptable to PURCHASER, with a Bank acceptable to PURCHASER, to set up the Account and obtain electronic fund transfer services. Merchant shall provide PURCHASER and/or its authorized agent with all of the information, authorizations necessary for verifying Merchant's receivables, receipts and deposits into the Account. Merchant shall authorize PURCHASER to deduct the amounts owed to PURCHASER for the Receipts as specified herein from settlement amounts which would otherwise be due to Merchant by permitting PURCHASER to withdraw the specific amount credited against the specified percentages by ACH debit of the Account. The authorization shall be irrevocable without the written consent of PURCHASER.

**1.2 Term of Agreement.** This Agreement shall have an indefinite term that shall last either until all the Merchant's obligations to PURCHASER are fully satisfied. This shall include but not be limited to any renewals, outstanding fees or costs.

**1.3 Financial Condition**. Merchant and Guarantor(s) authorize PURCHASER to investigate their financial responsibility and history, and will provide to PURCHASER any bank or financial statements, tax returns, or any other documentation, as PURCHASER deems necessary prior to or at any time after execution of this Agreement. A photocopy of this authorization will be deemed as acceptable for release of any necessary information. PURCHASER is authorized to update such information and financial profiles from time to time as it deems appropriate.

**1.4 Transactional History.** Merchant authorizes their banks or financial institions to provide PURCHASER with Merchant's banking and/or processing history to determine qualification or continuation in this program.

**1.5 Indemnification.** Merchant and Guarantor(s) jointly and severally indemnify and hold harmless PURCHASER, its officers, directors, shareholders, members, managers, employees, affiliates, agents and representatives against all losses, damages, claims, liabilities and expenses (including reasonable attorney's fees) incurred as a result of claims asserted against PURCHASER by Merchant to the fullest extent permitted by law.

**1.6 No Liability**. In no event will PURCHASER its officers, directors, shareholders, members, managers, employees, affiliates, agents or representatives be liable for any claims asserted by Merchant under any legal theory for lost profits, lost revenues, lost business opportunities, exemplary, punitive, special, incidental, indirect or consequential damages, each of which is waived by Merchant and Guarantor(s).

**1.7 Sale of Receipts.** Merchant and PURCHASER agree that the Purchase Price under this Agreement is in exchange for the Purchased Amount and that such Purchase Price is not intended to be, nor shall it be construed as a loan from PURCHASER to Merchant. Merchant agrees that the Purchase Price is in exchange for the sale of future Receipts pursuant to this Agreement equals the fair market value of such Receipts. PURCHASER has purchased and shall own all the Receipts described in this Agreement up to the full Purchased Amount as the Receipts are created. Payments made to PURCHASER in respect to the full amount of the Receipts shall be conditioned upon Merchant's sale of products and services and the payment therefore by Merchant's customers in the manner provided in Section 1.1. In no event shall the aggregate of all amounts be deemed as interest hereunder and charged or collected hereunder exceed the highest rate permissible at law. In the event that a court determines that PURCHASER has charged or received interest hereunder in excess of the highest applicable rate, the rate in effect hereunder shall automatically be reduced to the maximum rate permitted by applicable law and PURCHASER shall promptly refund to Merchant any interest received by PURCHASER in excess of the maximum lawful rate, it being intended that Merchant not pay or contract to pay, and that PURCHASER not receive or contract to receive, directly or indirectly in any manner whatsoever, interest in excess of that which may be paid by Merchant under applicable law.

**1.8 Power of Attorney** Merchant irrevocably appoints PURCHASER as its agent and attorney-in-fact with full authority to take any action or execute any instrument or document to settle all obligations due to PURCHASER from Processor/Bank, or in the case of a violation by Merchant of Section 1.9 or the occurrence of an Event of Default under Section 3 hereof, from Merchant, under this Agreement, including without limitation (i) to obtain and adjust insurance; (ii) to collect monies due or to become due under or in respect of any of the Collateral; (iii) to receive, endorse and collect any checks, notes, drafts, instruments, documents or chattel paper in connection with clause (i) or clause (ii) above; (iv) to sign Merchant's name on any invoice, bill of lading, or assignment directing customers or account debtors to make payment directly to PURCHASER; and (v) to file any claims or take any action or institute any proceeding which PURCHASER may deem necessary for the collection of any of the unpaid Purchased Amount from the Collateral, or otherwise to enforce its rights with respect to payment of the Purchased Amount.

**1.9 Protections Against Default.** The following Protections 1 through 6 may be invoked by PURCHASER, immediately and without notice to Merchant in the event (a) Merchant changes its deposit relationships with any financial institution in any way that interferes with PURCHASER's collection of the Receipts due; (b) Merchant closes or changes the bank account(s) through which the Receipts are settled, or permits any event to occur that could cause diversion of any of Merchant's transactions to another bank account; (c) Merchant interrupts the operation of its business (other than adverse weather, natural disasters or acts of God) transfers, moves, sells, disposes, transfers or otherwise conveys its business or assets without (i) the express prior written consent of PURCHASER, and (ii) the written agreement of any purchaser or transferee to the assumption of all of Merchant's obligations under this Agreement pursuant to documentation satisfactory to PURCHASER; or (d) any debit of the Specified Amount rejected or returned due to insufficient funds and Merchant fails to contact PURCHASER within three (3) business days. These protections are in addition to any other remedies available to PURCHASER at law, in equity or otherwise pursuant to this Agreement.

Protection 1. The full uncollected Purchase Amount plus all fees due under this Agreement and the attached Security Agreement become due and payable in full immediately

Protection 2. PURCHASER may enforce the provisions of the Personal Guarantee of Performance against the Guarantor.

Protection 3. PURCHASER may enforce its security interest in the Collateral identified in Article III hereof.

Protection 4. The entire Purchase Amount shall become immediately refundable to PURCHASER from Merchant.

Protection 5. PURCHASER may proceed to protect and enforce its rights and remedies by lawsuit. In any such lawsuit, in which PURCHASER shall recover judgment against Merchant, Merchant shall be liable for all of PURCHASER's costs of lawsuit, including but not limited to attorneys' fees of twenty-five percent (25%) of any balance due, court costs and expenses.

Protection 6. PURCHASER may debit Merchant's depository accounts wherever situated by means of ACH debit or facsimile signature on a computer-generated check drawn on Merchant's bank account or otherwise.

**1.10 Protection of Information**. Merchant and each person signing this Agreement on behalf of Merchant and/or as Owner, in respect of himself or herself personally, authorizes PURCHASER to disclose information concerning Merchant's and each Owner's credit standing (including credit bureau reports that PURCHASER obtains) and business conduct only to agents, affiliates, subsidiaries, and credit reporting bureaus. Merchant and each Owner hereby waives to the maximum extent permitted by law any claim for damages against PURCHASER or any of its affiliates and the PURCHASER relating to any (i) investigation undertaken by or on behalf of PURCHASER as permitted by this Agreement or (ii) disclosure of information as permitted by this Agreement.

**1.11 Publicity.** Merchant and each Owner only authorizes PURCHASER to use its, his or her name in a listing of clients and in advertising and marketing materials with their express written consent.

**1.12 UCC Agent & D/B/A's.** Merchant hereby acknowledges and agrees that PURCHASER may be using "doing business as" or "d/b/a" names in connection with various matters relating to the transaction between PURCHASER and Merchant, any may file UCC-1 financing statements and other notices or filings using such names on its own behalf or though PURCHASER's UCC agent. PURCHASER shall have no obligation to terminate any UCC financing statement filed in connection with this Agreement absent a written request by PURCHASER and after delivery of the Receipts Purchased Amount.

## II. REPRESENTATIONS, WARRANTIES AND COVENANTS

Merchant represents, warrants and covenants that as of this date and during the term of this Agreement:

**2.1 Financial Condition and Financial Information.** Merchant is solvent, and no transfer of property is being made by Merchant and no obligation is being incurred by Merchant in connection with this Agreement with the intent to hinder, delay, or defraud either present or future creditors of Merchant. Merchant's bank statements and financial information, provided to PURCHASER fairly represent the financial condition of Merchant at such

dates, and since those dates there has been no material changes, financial or otherwise, in such condition, operation or ownership of Merchant. Merchant is current on any and all lease, rent or mortgage payments due. No material changes, financial or otherwise, in the condition, operation or ownership of Merchant are in any way expected or anticipated. Merchant has a continuing, affirmative obligation to advise PURCHASER of any material change in its financial condition, operation or ownership. PURCHASER may request statements at any time during the performance of this Agreement and the Merchant shall provide them to PURCHASER within 5 business days. Merchant's failure to do so is a material breach of this Agreement.

**2.2 Governmental Approvals.** Merchant is in compliance and shall comply with all laws and has valid permits, authorizations and licenses to own, operate and lease its properties and to conduct the business in which it is presently engaged.

**2.3 Authorization.** Merchant, and the person(s) signing this Agreement on behalf of Merchant, have full power and authority to incur and perform the obligations under this Agreement, all of which have been duly authorized.

**2.4 Insurance.** Merchant will maintain business-interruption insurance naming PURCHASER as loss payee and additional insured in amounts and against risks as are satisfactory to PURCHASER and shall provide PURCHASER proof of such insurance upon request.

**2.5 Tax Obligations.** Merchant is currently in compliance with all federal state and local tax laws, has filed all returns, and has paid all taxes due, except as disclosed to PURCHASER.

**2.6 Change of Name or Location.** Merchant will not conduct Merchant's businesses under any name other than as disclosed to the PURCHASER or change any of its places of business without ten (10) days prior written notice to PURCHASER.

**2.7 Daily Batch Out.** Merchant will batch out receipts with all payment processors on a daily basis.

**2.8 Estoppel Certificate.** Merchant will at any time, and from time to time, upon at least one (1) day's prior notice from PURCHASER to Merchant, execute, acknowledge and deliver to PURCHASER and/or to any other person, person firm or corporation specified by PURCHASER, a statement certifying that this Agreement is unmodified and in full force and effect (or, if there have been modifications, that the same is in full force and effect as modified and stating the modifications) and stating the dates which the Purchased Amount or any portion thereof has been repaid.

**2.9 No Bankruptcy or Insolvency**. As of the date of this Agreement, Merchant represents that it is not insolvent and does not contemplate and has not filed any petition for bankruptcy protection under Title 11 of the United States Code or any state-law analogue, and there has been no involuntary petition under such laws brought or pending against Merchant. Merchant further warrants that it does not anticipate filing any such receivership or bankruptcy petition and it does not anticipate that an involuntary petition will be filed against it.

**2.10 Additional Financing. Merchant shall not enter into any arrangement, agreement or commitment for any additional financing, whether in the form of a purchase of receivables or a loan to the business with any party other than PURCHASER without PURCHASER's written permission.**

**2.11 Unencumbered Receipts.** Merchant has good, complete and marketable title to all Receipts, free and clear of any and all liabilities, liens, claims, changes, restrictions, conditions, options, rights, mortgages, security interests, equities, pledges and encumbrances of any kind or nature whatsoever or any other rights or interests that may be inconsistent with the transactions contemplated with, or adverse to the interests of PURCHASER.

**2.12 Business Purpose.** Merchant is a valid business in good standing under the laws of the jurisdictions in which it is organized and/or operates, and Merchant is entering into this Agreement for business purposes and not as a consumer for personal, family or household purposes.

**2.13 Default Under Other Contracts.** Merchant's execution of and/or performance under this Agreement will not cause or create an event of default by Merchant under any contract with another person or entity.

## III. EVENTS OF DEFAULT AND REMEDIES

**3.1 Events of Default.** The occurrence of any of the following events shall constitute an "Event of Default" hereunder: (a) Merchant shall violate any term or covenant in this Agreement; (b) Any representation or warranty by Merchant in this Agreement shall prove to have been incorrect, false or misleading in any material respect when made; (c) Merchant shall admit in writing within 120 days of funding its inability to pay its debts, or shall make a general assignment for the benefit of creditors, or any proceeding shall be instituted by or against Merchant seeking to adjudicate it a bankrupt or insolvent, or seeking reorganization, arrangement, adjustment, or composition of it or its debts; (d) the sending of notice of termination by Guarantor; (e) Merchant shall transport, move, interrupt, suspend, dissolve or terminate its business; (f) Merchant shall transfer or sell all or substantially all of its assets; (h) Merchant shall make or send notice of any intended bulk sale or transfer by Merchant; (i) Merchant shall use multiple depository accounts without the prior written consent of PURCHASER; (j) Merchant shall change its bank account without the prior written consent of PURCHASER; (k) Merchant shall perform any act that reduces the value of any Collateral granted under this Agreement; or (l) Merchant shall default under any of the terms, covenants and conditions of any other agreement with PURCHASER.

**3.2 Remedies.** In case any Event of Default occurs and is not waived pursuant to Section 4.4 hereof, PURCHASER on its own and on behalf of the PURCHASER may proceed to protect and enforce its rights or remedies by suit in equity or by action at law, or both, whether for the specific performance of any covenant, agreement or other provision contained herein, or to enforce the discharge of Merchant's obligations hereunder (including the Personal Guarantee) or any other legal or equitable right or remedy. All rights, powers and remedies of PURCHASER in connection with this Agreement may be exercised at any time by PURCHASER after the occurrence of an Event of Default, are cumulative and not exclusive, and shall be in addition to any other rights, powers or remedies provided by law or equity.

**3.3 Costs.** Merchant shall pay to PURCHASER all reasonable costs associated with (a) a breach by Merchant of the Covenants in this Agreement and the enforcement thereof, and (b) the enforcement of PURCHASER's remedies set forth herein, including but not limited to expenses, court costs and attorneys' fees of twenty-five percent (25%) of any balance due.

**3.4 Required Notifications. Merchant is required to give PURCHASER written notice within 24 hours of any filing under Title 11 of the United States Code. Merchant is required to give PURCHASER seven days' written notice prior to the closing of any sale of all or substantially all of the Merchant's assets or equity interests.**

## IV. MISCELLANEOUS

**4.1 Modifications; Amendment.** No modification, amendment, waiver or consent of any provision of this Agreement shall be effective unless the same shall be in writing and signed by PURCHASER.

**4.2 Assignment.** PURCHASER and any Principal may assign, transfer or sell its right to receive the Purchased Amount or delegate its duties hereunder, either in whole or in part. Merchant shall not have the right to assign its rights hereunder or any interest herein without the prior written consent of PURCHASER which consent may be withheld in PURCHASER's sole discretion. PURCHASER reserves the rights to sell or assign this Agreement with or without prior written notice to Merchant.

**4.3 Notices.** All notices, requests, consent, demands and other communications hereunder shall be delivered by certified mail, return receipt requested, to PURCHASER the address set forth in this Agreement and shall become effective only upon receipt.

**4.4 Waiver.** No failure on the part of PURCHASER to exercise, and no delay in exercising, any right under this Agreement shall operate as a waiver thereof, nor shall any single or partial exercise of any right under this Agreement preclude any other or further exercise thereof or the exercise of any other right. The remedies provided hereunder are cumulative and not exclusive of any remedies provided by law or equity.

**4.5 Binding Effect; Governing Law, Venue and Jurisdiction.** Merchant and Guarantor agree that any suit, action or proceeding to enforce or arising out of this Agreement shall be brought in any court in the Commonwealth of Virginia or in the United States District Court for the Eastern District of Virginia (the "Acceptable Forums"), and Merchant and Guarantor waive personal service of process. Merchant and Guarantor agree that the Acceptable Forums are convenient to them, submit to the jurisdiction of the Acceptable Forums and waive any and all objections to jurisdiction or venue. In the event a legal proceeding concerning this Agreement is initiated in any other forum, Merchant and Guarantor waive any right to oppose any motion or application made by PURCHASER to transfer such proceeding to an Acceptable Forum, or to dismiss the action on the grounds of *forum non conveniens*.

This Agreement and any claim, dispute or controversy (whether in contract, tort, or otherwise) at any time arising from or relating to this Agreement is governed by, and this Agreement will be construed in accordance with Virginia law (to the extent not preempted by federal law) without regard to internal principles of conflict of laws. The legality, enforceability and interpretation of this Agreement and the amounts contracted for under this Agreement

will be governed by the laws of the Commonwealth of Virginia. Merchant and Guarantor understand and agree that (i) PURCHASER and/or Colonial are located in Virginia, (ii) all final credit decisions are made from Virginia, (iii) the Agreement is made in Virginia (that is, no binding contract will be formed until Merchant's signed Agreement in received and accepted in Virginia) and (iv) Merchant's payments are not accepted until received in Virginia.

<u>4.6 Survival of Representation, etc.</u> All representations, warranties and covenants herein shall survive the execution and delivery of this Agreement and shall continue in full force until all obligations under this Agreement shall have been satisfied in full and this Agreement shall have terminated.

**<u>4.7 Severability.</u>** In case any of the provisions in this Agreement is found to be invalid, illegal or unenforceable in any respect, the validity, legality and enforceability of any other provision contained herein shall not in any way be affected or impaired.

**<u>4.8 Entire Agreement.</u>** Any provision hereof prohibited by law shall be ineffective only to the extent of such prohibition without invalidating the remaining provisions hereof. This Agreement and Security Agreement and Guaranty hereto embody the entire agreement between Merchant and PURCHASER and supersede all prior agreements and understandings relating to the subject matter hereof.

**<u>4.9 JURY TRIAL WAIVER.</u> THE PARTIES HERETO WAIVE TRIAL BY JURY IN ANY COURT IN ANY SUIT, ACTION OR PROCEEDING ON ANY MATTER ARISING IN CONNECTION WITH OR IN ANY WAY RELATED TO THE TRANSACTIONS OF WHICH THIS AGREEMENT IS A PART OR THE ENFORCEMENT HEREOF. THE PARTIES HERETO ACKNOWLEDGE THAT EACH MAKES THIS WAIVER KNOWINGLY, WILLINGLY AND VOLUNTARILY AND WITHOUT DURESS, AND ONLY AFTER EXTENSIVE CONSIDERATION OF THE RAMIFICATIONS OF THIS WAIVER WITH THEIR ATTORNEYS.**

**<u>4.10 CLASS ACTION WAIVER.</u> THE PARTIES HERETO WAIVE ANY RIGHT TO ASSERT ANY CLAIMS AGAINST ANY OTHER PARTY AS A REPRESENTATIVE OR MEMBER IN ANY CLASS OR REPRESENTATIVE ACTION. TO THE EXTENT ANY PARTY IS PERMITTED TO PROCEED WITH A CLASS OR REPRESENTATIVE ACTION, THE PARTIES HERETO AGREE THAT: (1) THE PREVAILING PARTY SHALL NOT BE ENTITLED TO RECOVER ATTORNEYS' FEES OR COSTS ASSOCIATED WITH PURSUING THE CLASS OR REPRESENTATIVE ACTION AND (2) THE PARTY WHO INITIATES OR PARTICIPATES AS A MEMBER OF THE CLASS WILL NOT SUBMIT A CLAIM OR OTHERWISE PARTICIPATE IN ANY RECOVERY SECURED THROUGH THE CLASS OR REPRESENTATIVE ACTION. THIS PROVISION IS A MATERIAL INDUCEMENT FOR PURCHASER TO ENTER INTO THIS AGREEMENT.**

**<u>4.11 ARBITRATION.</u>** ***PLEASE READ THIS PROVISION OF THE AGREEMENT CAREFULLY.*** **THIS SECTION PROVIDES THAT DISPUTES MAY BE RESOLVED BY BINDING ARBITRATION. ARBITRATION REPLACES THE RIGHT TO GO TO COURT, HAVE A JURY TRIAL OR INITIATE OR PARTICIPATE IN A CLASS ACTION. IN ARBITRATION, DISPUTES ARE RESOLVED BY AN ARBITRATOR, NOT A JUDGE OR JURY. ARBITRATION PROCEDURES ARE SIMPLER AND MORE LIMITED THAN IN COURT. THIS ARBITRATION PROVISION IS GOVERNED BY THE FEDERAL ARBITRATION ACT (FAA), AND SHALL BE INTERPRETED IN THE BROADEST WAY THE LAW WILL ALLOW.**

**Covered claims**

a. *Merchant and/or Performance Guarantors, (collectively hereinafter referred to as "Merchant") or PURCHASER may arbitrate* any claim, dispute or controversy between Merchant and PURCHASER arising out of or related to this Agreement, any other agreement, or the Merchant/PURCHASER relationship ( "Claims").

b. **If arbitration is chosen by any party in accordance with paragraph 4.11(h) neither Merchant nor PURCHASER will have the right to litigate that Claim in court or have a jury trial on that Claim.**

c. Except as stated below, all Claims are subject to arbitration, no matter what legal theory they are based on or what remedy (damages, or injunctive or declaratory relief) they seek, including Claims based on contract, tort (including intentional tort), fraud, agency, Merchant or PURCHASER's negligence, statutory or regulatory provisions, or any other sources of law; Claims made as counterclaims, cross-claims, third-party claims, interpleaders or otherwise; Claims made regarding past, present, or future conduct; and Claims made independently or with other claims. This also includes Claims made by or against anyone connected with PURCHASER or Merchant or claiming through PURCHASER or Merchant, or by someone making a claim through PURCHASER or Merchant, such as a co-applicant, authorized user, employee, agent, representative or an affiliated/parent/subsidiary company.

**Arbitration limits**

d. Individual Claims filed in a small claims court are not subject to arbitration, as long as the matter stays in small claims court.

e. PURCHASER will not initiate arbitration to enforce its rights under this Agreement. If Merchant asserts a Claim against PURCHASER, PURCHASER may elect to arbitrate any Claims against PURCHASER.

f. Claims brought as part of a class action, private attorney general or other representative action can be arbitrated only on an individual basis. The arbitrator has no authority to arbitrate any claim on a class or representative basis and may award relief only on an individual basis. If arbitration is chosen by any party, neither Merchant nor PURCHASER may pursue a Claim as part of a class action or other representative action. Claims of 2 or more persons may not be combined in the same arbitration. However, applicants, co-applicants, authorized users on a single account and/or related accounts, or corporate affiliates are here considered as one person.

**How arbitration works**

g. Arbitration shall be conducted by the American Arbitration Association ("AAA") according to this arbitration provision and the applicable AAA Commercial Arbitration Rules in effect when the claim is filed ("AAA Rules"), except where those rules conflict with this arbitration provision. Merchant can obtain copies of the AAA Rules at the AAA's website (www.adr.org) or by calling 800-778-7879. Merchant or PURCHASER may choose to have a hearing, appear at any hearing by phone or other electronic means, and/or be represented by counsel. Notwithstanding any terms to the contrary, any in-person hearing will be held in Arlington, Virginia

h. Arbitration may be requested any time, even where there is a pending lawsuit, unless a trial has begun or a final judgment entered. Neither Merchant nor PURCHASER waive the right to arbitrate by filing or serving a complaint, answer, counterclaim, or motion in a lawsuit. To choose arbitration, a party must file a motion to compel arbitration in a pending matter or commence arbitration by submitting the required AAA forms and requisite filing fees to the AAA.

i. The arbitration shall be conducted by a single arbitrator in accord with this arbitration provision and the AAA Rules, which may limit discovery. The arbitrator shall not apply any federal or state rules of civil procedure for discovery, but the arbitrator shall honor claims of privilege recognized at law and shall take reasonable steps to protect account information and other confidential information of either party if requested to do so. The arbitrator shall apply the substantive laws of the Commonwealth of Virginia without regard to any applicable principals of conflicts of law.

j. The arbitrator shall make any award in writing and, if requested by Merchant or PURCHASER, shall include a reasoned opinion. for the award. An arbitration award shall decide the rights and obligations only of the parties named in the arbitration, and shall not have any bearing on any other person or dispute.

k. The arbitrator shall have no authority to award punitive damages, consequential damages, or other damages not measured by the prevailing party's actual damages, except as required by statute.

**Paying for arbitration fees**

l. Arbitration fees will be allocated according to the applicable AAA Rules. All parties are responsible for their own attorney's fees, expert fees and any other expenses. unless the arbitrator awards such fees or expenses to PURCHASER based on applicable law.

m. The parties agree that failure or refusal of a party to pay its required share of the deposits for arbitrator compensation or administrative charges shall constitute a waiver by that party to present evidence or cross-examine witness. In such event, the other party shall be required to present evidence and legal argument as the arbitrator(s) may require for the making of an award. Such waiver shall not allow for a default judgment against the non-paying party in the absence of evidence presented as provided for above.

n. Except as may be required by law, neither a party nor an arbitrator may disclose the existence, content or results of any arbitration hereunder without the prior written consent of both parties.

**The final award**

o. Any award by an arbitrator is final unless a party appeals it in writing to the AAA within 30 days of notice of the award pursuant to the AAA's

Optional Appellate Arbitration Rules. The arbitration appeal shall be determined by a panel of 3 arbitrators. The panel will consider all facts and legal issues anew based on the same evidence presented in the prior arbitration, and will make decisions based on a majority vote. Arbitration fees for the arbitration appeal shall be allocated according to the applicable AAA Rules. An award by a panel on appeal is final. A final award is subject to judicial review as provided by applicable law.

**Survival and Severability of Terms**

p. This arbitration provision shall survive changes in this Agreement and termination of the account or the relationship between Merchant and PURCHASER, including the bankruptcy of any party and any sale of Merchant account, or amounts owed on Merchant account, to another person or entity. If any part of this arbitration provision is deemed invalid or unenforceable, the other terms shall remain in force, except that there can be no arbitration of a class or representative Claim. This arbitration provision may not be amended, severed or waived, except as provided in this Agreement or in a written agreement between Merchant and PURCHASERs.

**RIGHT TO OPT OUT OF ARBITRATION.**

q. MERCHANT AND GUARANTOR(S) MAY OPT OUT OF THE ARBITRATION PROVISION ABOVE. TO OPT OUT OF THE ARBITRATION CLAUSE, MERCHANT AND EACH GUARANTOR MUST SEND BUYER A NOTICE THAT THE MERCHANT AND EACH GUARANTOR DOES NOT WANT THE CLAUSE TO APPLY TO THIS AGREEMENT. FOR ANY OPT OUT TO BE EFFECTIVE, MERCHANT AND EACH GUARANTOR MUST SEND AN OPT OUT NOTICE TO THE FOLLOWING ADDRESS BY REGISTERED MAIL, WITHIN 14 DAYS AFTER THE DATE OF THIS AGREEMENT: Colonial Funding Network, Inc. – ARBITRATION OPT OUT, 2500 Wilson Boulevard, Suite 350, Arlington, VA 22201 ATTENTION: General Counsel.

**4.12 PURCHASER acting as Agent.**

PURCHASER has entered into this Agreement, the Merchant Security Agreement and the Guaranty (collectively, the Transaction Documents") as agent (in such capacity, "Agent") for itself and one or more third parties as "co-investors" or "co-PURCHASERs" (each a "Principal"). Agent and each Principal have elected to treat the transaction consummated under the Transaction Documents (the "Transaction") as a single transaction on behalf of separate Principals, and Agent hereby certifies that the portion of the Transaction allocable to the account of each of the Principals (the "Portion") for which it is acting (to the extent that any such Transaction is allocable to the account of more than one Principal) as set forth in one or more addenda to the Transactional Documents, which may be provided to Merchant upon request.

All references to "PURCHASER" or "Merchant" or "Performance Guarantors," as the case may be, in the Transaction Documents shall be subject to the provisions of this Section 4.11 and shall be construed to reflect that (i) each Principal shall have, in connection with with the Transaction entered into by the Agent on its behalf, all of the rights, responsibilities, privileges and obligations of a "PURCHASER" directly entering into such Transaction with the other parties under each of the Transaction Agrements and (ii) Agent's Principals have designated Agent (acting directly or through the Authorized Subservicing Agent) as their sole agents for performance of PURCHASER's obligations to Merchant and for receipt of performance by Merchant of its obligations to PURCHASER in connection with the Transaction (including, among other things, as Agent for each Principal in connection with transfers of cash or other property and as agent for giving and receiving all notices under the Transaction Documents), either directly. Both Agent and its Principals shall be deemed "parties" to the Transaction Documents and all references to a "party" or "either party" in any Transaction Document shall be deemed revised accordingly.

The parties hereto acknowledge and agree that any assignment, pledge and/or grant to PURCHASER by the Merchant or a Performance Guarantor of a security interest in and to any property and assets (including the Collateral and the Additional Collateral) pursuant to any of the applicable Transactoin Agreements to secure the payment and/or performance of any of their respective and/or joint obligations, shall be deemed to have been made to the PURCHASER for and on behalf of itself and any other Principal. PURCHASER hereby agrees to hold all Collateral and Additional Collateral hereafter delivered to it pursuant to the Transaction Documents, for itself and for the benefit of the Principals, on and subject to the terms and conditions set forth in the Transaction Documents. In its capacity, the Agent and Sub-Servicing Agent are each a "representative" of each of the Principals within the meaning of the term "secured party" as defined in the UCC. In addition to the representations and warranties set forth in the Transaction Documents, Agent hereby makes the following representations and warranties, which shall continue during the term of any Transaction: Principal has duly authorized Agent to execute and deliver the Transaction Documents on its behalf, has the power to so authorize Agent and to enter into the Transaction contemplated by the Transaction Documents and to perform the obligations of Fumder, and has taken all necessary action to authorize such execution and delivery by Agent and such performance by it.

**4.13 Counterparts; Facsimile and PDF Acceptance.**

This Agreement and the Merchant Security Agreement and Guaranty may be executed in counterparts, each of which shall constitute an original, but all of which together shall constitute one instrument. Signatures on this Agreement and the Merchant Security Agreement and Guaranty sent by facsimile or PDF will be treated as original signatures for all purposes.

DS IS

INITIALS: ___________

DocuSign Envelope ID: 7DFDD7FA-373C-4340-8F6F-EDA0E2210A94

# SECURITY AGREEMENT AND GUARANTY

Merchant's Legal Name: MTK 38, INC.

D/B/A: Japas 38

Physical Address: 9 East 38th St City: New York State: NY Zip: 10016

Federal ID# 45-4127757

DS IS

## SECURITY AGREEMENT

**Security Interest.** To secure Merchant's payment and performance obligations to PURCHASER under the Future Receivable Factoring Agreement between Merchant and PURCHASER (the "Merchant Agreement"), Merchant hereby grants to PURCHASER a security interest in all personal property of Merchant(s), including all accounts, chattel paper, cash, deposit accounts, documents, equipment, general intangibles, instruments, inventory, or investment property, as those terms are defined in Article 9 of the Uniform Commercial Code as amended (the "UCC"), whether now or hereafter owned or acquired by Merchant and wherever located; and all proceeds of such property, as that term is defined in Article 9 of the UCC (collectively, the "Collateral"). If the Merchant Agreement identifies more than one Merchant, this Security Agreement applies to each Merchant, jointly and severally.

Merchant acknowledges and agrees that any security interest granted to PURCHASER under any other agreement between Merchant and PURCHASER will secure the obligations hereunder, and that the Merchant's payment and performance obligations secured by this Security Agreement, and the Collateral granted hereunder, shall be perfected under any previously filed UCC-1 or UCC-3 statement, perfecting PURCHASER's interest in the Collateral.

Merchant further acknowledges and agrees that, if Merchant enters into future Agreements with PURCHASER, any security interest granted to PURCHASER under such future Agreements will relate back to this Security Agreement, and that the Merchant's payment and performance obligations, and the Collateral granted, under such future Agreements, shall relate back to, be perfected under, and made a part of, any previously filed UCC-1 or UCC-3 statement, perfecting PURCHASER's interest in the Collateral.

**Cross-Collateral.** To secure the payment and performance obligations to PURCHASER (and the PURCHASERs) under this Merchant Security Agreement and Guaranty (this "Agreement"), Merchant and each Guarantor hereby grants PURCHASER, for itself and its participants, a security interest in the collateral set forth in the Addendum to the Security Agreement and Guarantee (the "Additional Collateral"). Each Guarantor agrees and acknowledges that PURCHASER will have a security interest in the aforesaid Additional Collateral upon execution of this Agreement.

Guarantor acknowledges and agrees that any security interest granted to PURCHASER under any other agreement between Guarantor and PURCHASER will secure the obligations hereunder, and that the Guarantor's payment and performance obligations under this Agreement, and the Additional Collateral granted hereunder, shall be perfected under any previously filed UCC-1 or UCC-3 statement, perfecting PURCHASER's interest in the Additional Collateral.

Guarantor further acknowledges and agrees that, if Guarantor enters into future Agreements with PURCHASER, any security interest granted to PURCHASER under such future Agreements will relate back to this Agreement, and that the Guarantor's payment and performance obligations, and the Additional Collateral granted, under such future Agreements, shall relate back to, be perfected under, and made a part of, any previously filed UCC-1 or UCC-3 statement, perfecting PURCHASER's interesting the Additional Collateral.

Each of Merchant and each Guarantor agrees to execute any documents or take any action in connection with this Agreement as PURCHASER deems necessary to perfect or maintain PURCHASER's first priority security interest in the Collateral and Additional Collateral, including the execution of any control agreements. Each of Merchant and each Guarantor hereby authorizes PURCHASER to file any financing statements deemed necessary by PURCHASER to perfect or maintain PURCHASER's security interest, which financing statements may contain notification that Merchant and each Guarantor have granted a negative pledge to PURCHASER with respect to the Collateral and Additional Collateral, and that any subsequent lender or lienor may be tortiously interfering with PURCHASER's rights. Merchant and each Guarantor shall be jointly and severally liable for and shall pay to PURCHASER upon demand all costs and expenses, including but not limited to attorneys' fees, which may be incurred by PURCHASER in protecting, preserving and enforcing PURCHASER's security interest and rights.

**Negative Pledge.** Merchant and each Guarantor agrees not to create, incur, assume, or permit to exist, directly or indirectly, any additional financings, loans, lien or other encumbrance of any kind on or with respect to any of the Collateral or Additional Collateral, as applicable without written permission of PURCHASER.

**Consent to Enter Premises and Assign Lease.** PURCHASER shall have the right to cure Merchant's default in the payment of rent for the Premises on the following terms. In the event Merchant is served with papers in an action against Merchant for nonpayment of rent or for summary eviction, PURCHASER may execute its rights and remedies under the Assignment of Lease. Merchant also agrees that PURCHASER may enter into an agreement with Merchant's landlord giving PURCHASER the right: (a) to enter the Premises and to take possession of the fixtures, equipment and other Collateral therein for the purpose of protecting and preserving same; and (b) to assign Merchant's lease to another qualified merchant capable of operating a business comparable to Merchant's at the Premises.

**Remedies.** Upon any Event of Default, PURCHASER may pursue any remedy available at law (including those available under the provisions of the UCC) or in equity to collect, enforce, or satisfy any obligations then owing to PURCHASER, whether by acceleration or otherwise.

## GUARANTY

**Personal Guaranty of Performance.** The undersigned Guarantor(s) hereby guarantees to PURCHASER Merchant's performance of all of the representations, warranties, covenants made by Merchant in this Agreement and the Merchant Agreement, as each agreement may be renewed, amended, extended or otherwise modified (the " Guaranteed Obligations"). Guarantor's obligations are due (i) at the time of any breach by Merchant of any representation, warranty, or covenant made by Merchant in this Agreement and the Merchant Agreement, and (ii) if within 120 days Merchant admits its inability to pay its debts, or makes a general assignment for the benefit of creditors, or any proceeding shall be instituted by or against Merchant seeking to adjudicate it bankrupt or insolvent, or seeking reorganization, arrangement, adjustment, or composition of it or its debts. (It is understood by all parties that Guarantors are only guaranteeing that they will not take any action or permit the merchant to take any action that is a breach of this agreement.)

**Guarantor Waivers.** In the event that Merchant fails to make a payment or perform any obligation due to Guarantor's actions or malfeasance under the Merchant Agreement, PURCHASER may enforce its rights under this Agreement without first seeking to obtain payment from Merchant, any other guarantor, or any Collateral, Additional Collateral or Cross-Collateral PURCHASER may hold pursuant to this Agreement or any other guaranty.

DocuSign Envelope ID: 7DFDD7FA-373C-4340-8F6F-EDA0E2210A94
PURCHASER does not have to notify Guarantor of any of the following events and Guarantor will not be released from its obligations under this Agreement if it is not notified of: (i) Merchant's failure to pay timely any amount owed under the Merchant Agreement; (ii) any adverse change in Merchant's financial condition or business; (iii) any sale or other disposition of any collateral securing the Guaranteed Obligations or any other guarantee of the Guaranteed Obligations; (iv) PURCHASER's acceptance of this Agreement ; and (v) any renewal, extension or other modification of the Merchant Agreement or Merchant's other obligations to PURCHASER. In addition, PURCHASER may take any of the following actions without releasing Guarantor from any of its obligations under this Agreement: (i) renew, extend or otherwise modify the Merchant Agreement or Merchant's other obligations to PURCHASER; (ii) release Merchant from its obligations to PURCHASER; (iii) sell, release, impair, waive or otherwise fail to realize upon any collateral securing the Guaranteed Obligations or any other guarantee of the Guaranteed Obligations; and (iv) foreclose on any collateral securing the Guaranteed Obligations or any other guarantee of the Guaranteed Obligations in a manner that impairs or precludes the right of Guarantor to obtain reimbursement for payment under this Agreement. Until the Purchased Amount plus any accrued but unpaid interest and Merchant's other obligations to PURCHASER under the Merchant Agreement and this Agreement are paid in full, Guarantor shall not seek reimbursement from Merchant or any other guarantor for any amounts paid by it under this Agreement. Guarantor permanently waives and shall not seek to exercise any of the following rights that it may have against Merchant, any other guarantor, or any collateral provided by Merchant or any other guarantor, for any amounts paid by it, or acts performed by it, under this Agreement including without limitation under the following rights and remedies: (i) subrogation; (ii) reimbursement; (iii) performance; (iv) indemnification; or (v) contribution. In the event that PURCHASER must return any amount paid by Merchant or any other guarantor of the Guaranteed Obligations because that person has become subject to a proceeding under the United States Bankruptcy Code or any similar law, Guarantor's obligations under this Agreement shall include that amount.

**Guarantor Acknowledgement. Guarantor acknowledges that: (i) He/She understands the seriousness of the provisions of this Agreement; (ii) He/She has had a full opportunity to consult with counsel of his/her choice; and (iii) He/She has consulted with counsel of its choice or has decided not to avail himself/herself of that opportunity.**

DS IS

INITIALS: ________

**Joint and Several Liability.** The obligations hereunder of the persons or entities constituting Guarantor under this Agreement are joint and several.

**Consent to Receive Autodialed and Prerecorded Calls and Messages.** PURCHASER, Colonial Funding Network, Inc., as servicer, and their subsidiaries and affiliates (collectively, SFS) may from time to time notify Merchant(s), and Owner(s) of various promotional offers and other marketing information, or contact Merchant(s) and Owners(s) in connection with the servicing of this Agreement, or in connection with any default under this Agreement. By signing this Agreement, Merchant(s), and Owner(s) expressly consent and authorize Colonial and PURCHASERS to call, send text messages, and/or send other electronic messages (including prerecorded or artificial voice messages) using an automatic telephone dialing system to any telephone number provided by Merchant(s) and Owner(s) in this Agreement or corresponding administrative form or any other applications for funding, including cellular phone numbers and landlines, regardless of their inclusion on any do not call list for purposes of servicing, collections, marketing, or promoting any product offered by SFS.

Please note that Merchant(s) and Owner(s) are not required to consent to this section of this Agreement in order to qualify or obtain any products or services from SFS. If you do not agree to be called for marketing or promotional purposes please check the appropriate boxes below:

Merchant 1: ☐ Owner 1: ☐

Merchant 2: ☐ Owner 2: ☐

**THE TERMS, DEFINITIONS, CONDITIONS AND INFORMATION SET FORTH IN THE "MERCHANT AGREEMENT", ARE HEREBY INCORPORATED IN FULL AND MADE A PART OF THIS SECURITY AGREEMENT AND GUARANTY. CAPITALIZED TERMS NOT DEFINED IN THIS SECURITY AGREEMENT AND GUARANTY, SHALL HAVE THE MEANINGS SET FORTH IN THE MERCHANT AGREEMENT.**

**MERCHANTS AND OWNERS/GUARANTORS ACKNOWLEDGE THAT THIS WRITING REPRESENTS THE ENTIRE AGREEMENT BETWEEN THE PARTIES HERETO. IT IS UNDERSTOOD THAT ANY REPRESENTATIONS OR ALLEGED PROMISES BY INDEPENDENT BROKERS OR AGENTS OF ANY PARTY IF NOT INCLUDED IN THIS WRITTEN AGREEMENT ARE CONSIDERED NULL AND VOID. ANY MODIFICATION OR OTHER ALTERATION TO THE AGREEMENT MUST BE IN WRITING AND EXECUTED BY THE PARTIES TO THIS CONTRACT.**

**MERCHANT #1**

**By** **Insook Sterling, Owner**
**(Print Name and Title)**

DocuSigned by: Insook Sterling E3DFB62E59254F5...
**(Signature)**

**MERCHANT #2**

**By** ______________________
**(Print Name and Title)**

______________________
**(Signature)**

**OWNER/GUARANTOR #1**

**By** **Insook Sterling, Owner**
**(Print Name and Title)**

DocuSigned by: Insook Sterling E3DFB62E59254F5...
**(Signature)**

**OWNER/GUARANTOR #2**

**By** ______________________
**(Print Name and Title)**

______________________
**(Signature)**

DocuSign Envelope ID: 7DFDD7FA-373C-4340-8F6F-EDA0E2210A94




## APPENDIX A: SCHEDULE OF FEES

**A. Origination Fee** — **To cover underwriting and related expenses**

| Amount Funded | Origination Fee |
|---|---|
| Up to $15,000.00 | $395.00 |
| Over $15,000.00 | 2.5% of Amount Funded |
| Due diligence Fee | $0.00 |

**B. Rejected ACH or NSF Fee**

**If Daily ACH Payments**

| Amount Funded | Reject Fee |
|---|---|
| Up to $7,500.00 | $25.00 |
| $7,501.00-$50,000.00 | $35.00 |
| $50,001.00-$100,000.00 | $50.00 |
| $100,001.00-$250,000.00 | $75.00 |
| Over $250,000.00 | $100.00 |

**If Weekly ACH Payments**

| Amount Funded | Reject Fee |
|---|---|
| Up to $7,500.00 | $75.00 |
| $7,501.00-$50,000.00 | $99.00 |
| $50,001.00-$100,000.00 | $175.00 |
| $100,001.00-$250,000.00 | $275.00 |
| Over $250,000.00 | $395.00 |

| | | |
|---|---|---|
| **C. Bank Change Fee** | **$75.00** | **When Merchant requires a change of account to be Debited requiring us to adjust our system** |
| | **$2,500.00** | **When Merchant defaults under the terms of this Agreement** |
| **E. UCC Termination Fee** | **$150.00** | **When Merchant requests a UCC termination** |
| **F. Administrative Fee** | **$0.00** | |

**Miscellaneous Service Fees.** If Merchant elects to have the funding electronically deposited to their designated bank account by Fed Wire, Merchant shall pay a $50 wire fee. If Merchant elects to have the funding electronically deposited to their designated bank account by ACH transfer, Merchant shall pay a $20.00 fee.

Other than the Origination Fee, if any, set forth above, PURCHASER is NOT CHARGING ANY ORIGINATION OR BROKER FEES to Merchant. If Merchant is charged another such fee, IS NOT BEING CHARGED BY COLONIAL OR PURCHASER NOR DOES COLONIAL OR PURCHASER RECEIVE ANY PORT[illegible] SUCH FEES.

DS
IS

MERCHANT INITIALS: ____________

# ADDENDUM TO MERCHANT AGREEMENT

**MERCHANT INFORMATION**

Merchant's Legal Name: MTK 38, INC.
D/B/A: Japas 38 | State of Incorporation / Organization: NY
Type of entity: Corporation
Physical Address: 9 East 38th St | City: New York | State: NY | Zip: 10016
Mailing Address: | City: | State: | Zip:
Date business started (mm/yyyy): 04/2002 | Federal ID# 45-4127757

**THE TERMS, DEFINITIONS, CONDITIONS AND INFORMATION SET FORTH IN THE MERCHANT AGREEMENT ARE HEREBY INCORPORATED IN FULL AND MADE A PART OF THIS AGREEMENT.**

**MERCHANT #3**

**By N/A** ______________________ ______________________
**(Print Name and Title)** **(Signature)**

**MERCHANT #4**

**By N/A** ______________________ ______________________
**(Print Name and Title)** **(Signature)**

**OWNER/GUARANTOR #3**

**By N/A** ______________________ ______________________
**(Print Name and Title)** **(Signature)**

**OWNER/GUARANTOR #4**

**By N/A** ______________________ ______________________
**(Print Name and Title)** **(Signature)**

**Joint and Several Liability.** The obligations hereunder of the persons or entities constituting each Merchant and each Guarantor under this Agreement are joint and several.

**Consent to Receive Autodialed and Prerecorded Calls and Messages.** PURCHASER, Colonial Funding Network Inc., as servicer, and their subsidiaries and affiliates (collectively, SFS) may from time to time notify Merchant(s), and Owner(s) of various promotional offers and other marketing information, or contact Merchant(s) and Owners(s) in connection with the servicing of this Agreement, or in connection with any default under this Agreement. By signing this Agreement, Merchant(s), and Owner(s) expressly consent and authorize Colonial and PURCHASERS to call, send text messages, and/or send other electronic messages (including prerecorded or artificial voice messages) using an automatic telephone dialing system to any telephone number provided by Merchant(s) and Owner(s) in this Agreement or corresponding administrative form or any other applications for funding, including cellular phone numbers and landlines, regardless of their inclusion on any do not call list for purposes of servicing, collections, marketing, or promoting any product offered by SFS.

Please note that Merchant(s) and Owner(s) are not required to consent to this section of this Agreement in order to qualify or obtain any products or services from SFS. If you do not agree to be called for marketing or promotional purposes please check the appropriate boxes below:

Merchant 3: ☐ Owner 3: ☐

Merchant 4: ☐ Owner 4: ☐

# ADDENDUM TO SECURITY AGREEMENT AND GUARANTY

**MERCHANT INFORMATION**

Merchant's Legal Name: MTK 38, INC.
D/B/A: Japas 38 — State of Incorporation / Organization: NY
Type of entity: Corporation
Physical Address: 9 East 38th St — City: New York — State: NY — Zip: 10016
Mailing Address: — City: — State: — Zip:
Date business started (mm/yyyy): 04/2002 — Federal ID# 45-4127757

**Additional Collateral: MAY'S PLACE INC, ICHIBAN 71 CLINTON INC. / The Whales 71 LLC**

**THE TERMS, DEFINITIONS, CONDITIONS AND INFORMATION SET FORTH IN THE "SECURITY AGREEMENT AND GUARANTY" ARE HEREBY INCORPORATED IN FULL.**

**Joint and Several Liability.** The obligations hereunder of the persons or entities constituting each Merchant and each Guarantor under this Agreement are joint and several.

**MERCHANT #3**

**By** N/A ____________________ ____________________
**(Print Name and Title)** **(Signature)**

**MERCHANT #4**

**By** N/A ____________________ ____________________
**(Print Name and Title)** **(Signature)**

**OWNER/GUARANTOR #3**

**By** N/A ____________________ ____________________
**(Print Name and Title)** **(Signature)**

**OWNER/GUARANTOR #4**

**By** N/A ____________________ ____________________
**(Print Name and Title)** **(Signature)**